### JONES *v.* CHARLES H. SAGAR Co. *et al.*

*(Supreme Court, General Term, Fifth Department. April 16, 1891.)*

DANGEROUS PREMISES—CONTRIBUTORY NEGLIGENCE.

 In an action for personal injuries to plaintiff from falling into an opening in the floor of defendants' store, it appeared that the opening had been made in repairing the floor, and that defendants continued their business without any warning to customers of danger, except by a carpenter, working near the door. Plaintiff, entering the store, exclaimed that she was snow-blinded. The carpenter testified that he spoke to her in a natural tone, telling her to be careful; that the floor was up in front of her, and that she seemed to hear him, and looked down towards the floor, and answered "Yes." As he was returning to his work, she took a step forward, directly into the hole, and was injured. She testified that she did not know there was any opening in the floor, and that, as she had a veil over her head and ears, she did not hear any one speak to her, and that she said nothing to any one on entering, except to say that she was snow-blinded. *Held,* that it was error to dismiss the complaint on the ground that proper warning was given and not heeded by her. She was not at fault for having her ears muffled, not being in a place where danger was to be anticipated; and the question of fact should have been submitted to the jury.

Exceptions from circuit court, Cayuga county.

Action by Harriet E. Jones against the Charles H. Sagar Company and others. At the trial, the complaint was dismissed, and the exceptions were ordered to be heard in the first instance at the general term.

Argued before DWIGHT, P. J., and MACOMBER and CORLETT, JJ.

*John D. Teller,* for plaintiff. *George Underwood,* for defendants.

MACOMBER, J. This action was brought to recover damages for personal injuries received by the plaintiff. On the 11th day of March, 1889, the plaintiff entered a store building at 109 Genesee street in the city of Auburn, occupied as lessee by the defendant the Charles H. Sagar Company as a retail drug-store, the title of the property being in the other defendants. At the time stated, the carpenters were at work inside of the store repairing the floor, under the employment of the owners of the real estate. While such repairs were in progress, the defendant the Charles H. Sagar Company continued its business as usual, no warning to customers being posted at the door or elsewhere. The business proceeded as usual on the day in question. The store was about 25 feet wide and between 50 and 70 feet in length. It had

a plate glass front, set with large single lights on the line of the street on each side of the entrance. There were double doors set back a space from the line of the street, and windows of single plate glass from the door posts on either side to meet the large windows in front, thus making substantially an entire glass front to the whole store. At the time the plaintiff received her injuries there were no counters or furniture in the front part of the store near the door, the same having been moved back to enable the carpenters to prosecute their work. On the west side of the store there was no counter at the front end of the store. About 15 feet back, however, there was a small desk, and extending back into the store from that there was a counter. A portion of the old floor had been taken up by the workmen. Immediately in front of the door through which the plaintiff passed into the store was a piece of flooring which formed a sort of platform extending from the door back three or four feet into the store. There was an opening in the floor extending from the north-east corner of this platform down towards the rear of the store, three or four feet distant from and east of the center of the door through which the plaintiff passed. The president of the company had instructed the workmen to be careful, and to warn customers of the existence of the hole in the floor. One of the carpenters, Gould, was working near the door, especially charged with the duty of forewarning customers of the dangerous condition of the floor. As the plaintiff passed into the store, which was at 10 o'clock in the forenoon, she encountered a young man, who was passing out, who crowded her somewhat. As she came inside the store and onto the platform she paused, and exclaimed that she was snow-blinded, and could not see. In this she was corroborated by Gould, who testified that she said she was somewhat snow-blinded, and could not see very well. During this time Gould was kneeling on the floor, nailing a board, within two or three feet of the east door-post, and, as he testified, while standing within three feet of her, said in his natural tone of voice: "Be careful; we are laying a new floor here, and it is up in front of you." He said that she seemed to hear him, and apparently tooked down towards the floor in front of her, and he supposed, as he testified, that she saw the hole, as she made the answer "Yes" to the remark which Gould had made to her. As Gould was returning to this work, the plaintiff took a step forward with her left foot, directly into the hole, where her injuries were received. The plaintiff testified that she did not know that there was any opening in the floor, and that, as she had a veil over her head and ears, she did not hear any one speak to her, and said nothing to any person on entering the store, except to say that she was snow-blinded. The learned justice at the trial directed a dismissal of the complaint solely upon the ground that the workman, Gould, gave a proper warning to the plaintiff, which she was bound to heed, and, not heeding it, she cannot recover for her injuries there received. It must be borne in mind, however, that though Gould was in that part of the store at work upon the floor, and was charged with the duty to forewarn customers of the dangerous condition of the floor, yet, according to his own testimony, the warning was given in an ordinary tone of voice, after the plaintiff had made her exclamation that she was blinded by the glare of the sun upon the snow. The plaintiff's ears were muffled, it is true, so that, if she had been in a place where danger was to be anticipated, she might be said to have been at fault in not having her hearing at command, so as to heed any warning that might be given; but she was not anticipating danger; she was not in a place where any person would be called upon to take unusual care; she was, by implied invitation, entering a public place. Under these circumstances, we think the case was not properly disposed of by the learned justice at the trial, and that it presented a question of fact which should have been submitted to the jury. It follows that the motion for a new trial should be granted, with costs to abide the event. All concur.