SKINNER v. FT. WAYNE. T. H. & S. W. R. CO. (ROHM et al., Interveners).

(Circuit Court, D. Indiana.　February 9, 1900.)

Nos. 8,766. 9,093.

Fixtures—Nature of Use—Railroad Tracks.

> Rails, ties, fish plates, etc., constituting the track of a railroad, laid down by a railroad company solely for use as a part of its entire line in its business as a common carrier, on land over which it has obtained an easement of right of way by grant from the owner of the fee, do not become annexed to the freehold, but remain personal property of the company after its easement has been extinguished by a sale of the land under a prior mortgage.

This is a suit in equity for the foreclosure of a railroad mortgage. Heard on demurrer to the answer to an intervening petition.

Puett & McFadden, for intervener.

W. P. Kappes, for receiver.

BAKER, District Judge.　This is an intervening petition by E. H. Calvin Rohm and others against Frank L. Winsor, as receiver, who is in possession of the railroad and other property of the above-named railroad company under and by virtue of a decree of this court. This intervention is brought to determine the title and right of possession of certain steel rails, fish plates, frogs, and targets. The question is raised by a demurrer to the answer.

The facts material to the decision of the question are the following: The railroad company was duly organized under the general laws of this state prior to the year 1891 for the construction of a railroad between certain specified termini.　The proposed line of said railroad passed over a certain parcel of land belonging to the petitioners.　The railroad company failed to agree with them for the acquisition of a right of way over their land.　In January, 1891, the Rohms conveyed the land to one George D. Cook, trustee, for $18,000, of which sum $9,000 was paid in hand, and the remaining $9,000 was secured by a note and mortgage on the granted premises.　Shortly thereafter Cook granted to the railroad company a right of way over and across the premises, and the railroad company, by its contractors, entered upon said right of way, and threw up a grade, laid down its ties, and spiked the steel rails firmly to the ties, and put the frogs, fish plates, and targets on said right of way in connection with the track so laid down.　Cook having defaulted in paying the note secured by the mortgage, the petitioners brought suit in the circuit court of Parke county, Ind., for the foreclosure of the mortgage against the mortgagor, Cook, and the Ft. Wayne, Terre Haute & Southwestern Railroad Company and others, and service of process was duly had upon them.　At the November term, 1891, of said court, a decree was duly entered foreclosing said mortgage, and ordering the premises described therein to be sold.　In March, 1892, the land was duly sold, and bid in by the petitioners, and, not having been redeemed, a proper deed of conveyance of said premises was executed to them by the sheriff of Parke county, Ind.　The railroad company remained in possession of its railroad and right of way until November, 1893, when this court took possession of the same through a receiver duly

appointed therefor. The contention of the petitioners is that the steel rails, fish plates, frogs, and targets, having been annexed to the right of way granted by Cook after the execution of the mortgage, became fixtures; and that by the foreclosure of the mortgage, and by the purchase and conveyance of the premises to them under said decree, the petitioners have become the owners of the right of way and of the steel rails and other articles annexed to the soil.

The general rule of the common law certainly is that whatever is annexed and fixed to the soil becomes a part of it, and cannot be removed except by him who is entitled to the inheritance. But this general rule is subject to certain exceptions as firmly settled as the rule itself. Trade fixtures have been held by the earliest cases in which the question arose to be an exception. No matter how strongly attached to the soil, nor how firmly imbedded therein, such fixtures are regarded as personal property, and as such removable by the party erecting them. In the leading case of Elwes v. Mawe, 3 East, 38, the earlier and more important cases on this subject were carefully reviewed by Lord Ellenborough, and his conclusion from them that trade buildings and fixtures have always been recognized as an exception to the general rule has been acquiesced in, and uniformly followed as a correct statement of the law. Another exception, or rather an enlargement of the foregoing exception, is that of structures upon the land of another, which have been erected by the builder at his own cost, and for his own exclusive use, as disconnected with the use of the land. If so erected with the knowledge and acquiescence of the owner of the land, the title remains in the builder, and the property is held by him as a personal chattel. The purpose of the annexation and the relation of the parties to the property before and after annexation are important, but not always controlling, considerations. An article annexed to the land may, for some purposes, and between certain parties, be regarded as realty, while, as respects other parties and objects, a similar article may be regarded as retaining its character as personalty. The mode of annexation alone will not determine the character of the property annexed. The general principle to be constantly kept in view, which underlies all questions of this kind, is the distinction between the business which is carried on in or upon the premises and the premises or the locus in quo where it is carried on. The business is personal in its nature, and articles that are merely accessory to the business, and are put upon the premises solely for this purpose, and not as accessories to the freehold, retain the personal character of the principal to which they appropriately belong, and to which they are subservient. Annexations to the soil as accessories to it, and which are not annexed for the benefit of any particular business, become fixtures annexed to the freehold, and are not removable by the party erecting them. The difficulty in any given case is in determining on which side of the dividing line to assign any given article annexed to the soil. In the present case the railroad company entered upon the land under a grant of a right of way by the owner of the fee. The mortgage of the petitioners gave them simply a lien

on the land, and conveyed to them no title or estate therein. The railroad company rightfully entered upon the land under a grant of a right of way from the only person who possessed the right to make such grant. By this grant the railroad company acquired an easement for the construction of a railroad solely for personal use in carrying on the business of a common carrier of goods and passengers. The ties and rails and other articles laid or placed in or upon this easement of way were so laid and placed for the sole purpose of constructing a continuous railroad track to enable the railroad company to carry on its business as a common carrier. The superstructures on the right of way were annexed to the right of way for personal use, with no intention to annex them to the freehold. It would be absurd to suppose such superstructures were placed in or upon an isolated part of a continuous right of way for the betterment of the inheritance. If the rails and other property did not become annexed to the freehold as fixtures at the time they were placed on the right of way, they certainly have never lost their character as personal property; and, if they have always retained their character as personalty, then neither the real-estate mortgage of the petitioners nor the foreclosure and sale thereunder have wrought any change in their character or title.

The case of Graham v. Railroad Co., 36 Ind. 463, holds that, where a railroad company has, without the consent of the owner, entered upon land, and has built a depot and hotel thereon for railroad purposes, such structures become fixtures annexed to the freehold, and that in condemnation proceedings by the railroad company to acquire a right of way over the land it must pay for those structures as a part of the realty of the landowner. If this case were conceded to be a correct exposition of the law, it would not be controlling. But the case is unsound in principle, and is in conflict with the great weight of authority. A review of a few of these cases may not be unprofitable.

Corwin v. Cowan, 12 Ohio St. 629, was a case where a canal company had acquired an easement over certain land for the construction of its canal. It had imbedded in the soil of its right of way materials used in building locks. Subsequently, by abandonment, the easement terminated. It was held that the materials so used remained personalty, and that the reversion of the easement to the owner of the inheritance did not carry with it the ownership of the materials used in the construction of the locks, and that they were never intended as annexations to the freehold, and, having been rightfully used in building the locks, they were removable as personal property.

Wagner v. Railroad Co., 22 Ohio St. 563, was a case where a railroad company had acquired a right of way for its road over a certain parcel of land, and had built stone piers firmly imbedded in the soil of its right of way. The railroad company subsequently abandoned its purpose of completing its railroad. It was decided that these stone piers remained personal property, and that, as between the railroad company and the owner of the freehold, the company had the right of removal.

Railroad Co. v. Morgan, 42 Kan. 23, 21 Pac. 809, 4 L. R. A. 284, was a case where a railroad company by mistake, and without the knowledge or consent of the landowner, dug a well, and put in a pump and boiler, which were attached to the soil of the landowner. After some years the railroad company discovered the mistake, and took steps to remove the pump and boiler. The owner of the land sought to enjoin such removal, on the ground that the pump and boiler were fixtures annexed to the soil. It was held that these articles were personalty, and that the railroad company had the right of removal without paying for them to the owner of the land.

The case of Northern Cent. Ry. Co. v. Canton Co. of Baltimore, 30 Md. 352, was replevin to recover the possession of a lot of iron rails, frogs, spikes, and bolts brought by the railway company against the Canton Company. The railroad had been laid under a parol license on the land of the Canton Company. The latter company had recovered the right of way in an action of ejectment, and, under a writ of habere facias possessionem, possession of the right of way had been delivered to it by the sheriff. The court held that the rails and other articles remained personal property, and belonged to the railway company. The supreme court of Michigan had the same question before it in Railway Co. v. Dunlap, 47 Mich. 456, 11 N. W. 271. The court said:

"The railroad company, whether rightfully or wrongfully, laid its track while in possession, and with purpose entirely distinct from any use of the land as an isolated parcel. It would be absurd to apply to land so used, and to a railroad track laid on it, the technical rules which apply in some other cases to structures attached to the freehold. Whatever rule might apply in the case of abandonment, it is clear that the superstructure was never designed to be incorporated with the soil except for the purpose attending the possession, and in proceeding to obtain legal and permanent right to occupy the land for this very purpose."

The court further said that there would be no sense in compelling the railway company to buy its own property.

The case of Railway Co. v. Le Blanc, 74 Miss. 626, 21 South. 748, shortly stated, was this: A right of way on which a railroad track was wrongfully laid was sold at a tax sale, and the title so acquired was duly confirmed in the purchaser by appropriate judicial proceedings. The purchaser claimed that he became the owner of the rails laid down on the right of way as fixtures annexed to the soil. The court held that the rails were personalty, and did not pass by the sale of the right of way on which they had been wrongfully laid, nor by the judicial confirmation of the tax title. It was declared that the general rule that things annexed to the soil by trespassers belong to the owner of the freehold was not applicable as against a corporation having the right of eminent domain, where such corporation had wrongfully entered and made improvements for the public purpose for which it was created and given the right.

Reason as well as the great weight of authority support the foregoing views. It follows that the steel rails and other articles in controversy have always remained personal property, and belong to the railroad company, to be disposed of by the receiver for the benefit of its creditors. The demurrer to the answer is overruled.