CAMERON v. ROBBINS.

Opinion delivered January 26, 1920.

1. FIXTURES—RIGHT TO REMOVE—PREMATURE ACTION.—Where appellee conveyed timber to a lumber company to be removed in seven years, with a stipulation that buildings erected by the company on lands leased from others, on expiration of the time allowed for removing timber should be left on appellee's land, and belong to him, and such buildings were erected on land leased from others under contracts stipulating that they should remain the property of the lumber company, removable at the end of the lease, *held* when a claim to such buildings was asserted by the judgment creditor of the lumber company's successor appellee could assert his rights to them prior to expiration of the seven years.

2. FRAUDS, STATUTE OF—FIXTURES.—Houses erected by a lumber company on leased land which, under written contract, were to remain the property of the company as trade fixtures never became part of the realty, but remained personal property, and the only provision of the statute of frauds applicable thereto would be that which relates to the sale of chattels.

3. FRAUDS, STATUTE OF—AGREEMENT FOR REMOVAL OF FIXTURES.—Where the grantor of timber to a lumber company and the company contracted in writing that houses erected on the grantor's land by the company should belong to the grantor at the end of the period allowed for removal of the timber, a subsequent verbal contract that buildings erected by the company on lands of a third person should also belong to the grantor above named, the part of the contract not in writing was one not within the statute of frauds.

4. FRAUDS, STATUTE OF—AGREEMENT NOT TO BE PERFORMED WITHIN YEAR.—Where a contract for the sale of timber agreed that the timber should be removed within a period of time not exceeding seven years, and that at the expiration of the time allowed for removing the timber the seller should own the buildings erected by the buyer, the contract was not within Kirby's Digest, subdivision 6, relative to agreements not to be performed in a year.

Appeal from Union Circuit Court; *Turner Butler,* Judge; affirmed.

*Geo. M. LeCroy,* for appellant.

No right or cause of action was shown in appellee and the court erred in holding otherwise and directing a verdict for him. The law can not incorporate into an in-

strument what the parties have left out, even though the omission was by mistake. 94 Ark. 130. By reason of our execution lien we have the right to invoke whatever defense F. H. Shackelford might set up as against Robbins, and appellee can not rely upon both his written contract and an oral one engrafted thereon also. If the title notes, together with the contracts, amounted to a chattel mortgage and not subject to levy or sale, as to the houses there at the time of the sale and conditionally sold to Shackelford by Wilson, yet this construction could not apply to those later built. It was a chattel mortgage and unrecorded, and not good as against creditors. 97 Ark. 436. The houses, being on leased land with the express right of removal and for trade purposes only, were trade fixtures and may be seized and sold under execution. 19 Cyc. 1365-6. Appellant or Shackelford had such a property right as was subject to execution and sale. Kinnard received his money back, as he was paid $300, which went to Mrs. Shackelford. This defense was pleaded and was well taken, and appellant should have judgment for the amount of his execution and penalty. Kirby's Digest, § § 3267-3272.

*Neill C. Marsh,* for appellee.

1. There is no conflict in the evidence. It shows conclusively that it was the intention and the agreement of the parties that all houses built there were to be and were the property of H. F. Robbins; that they were built of his timber; that the mill company had only the right to use them so long as it operated and not longer than January 9, 1921. The transfer to Josephine Shackelford was a conditional one, a conditional sale, the lumber company retaining the title to everything sold until all the purchase money was paid. The houses were appurtenant to the mill—a part of the plant—and necessary to its operation so long as it operated. The sale to Mrs. Shackelford conveyed appurtenances burdened with the conditions and obligations and the agreement between the lumber company and Robbins as to these houses

was one of the burdens and conditions. The court was right in instructing a verdict.

2. It is clear that the houses built were to be the property of H. F. Robbins, but it was agreed that the right to the houses should pass to the grantor, Robbins, in the timber deed the same as if the mill operation would have been placed upon the property as first agreed and this was of record long before Shackelford made the conditional purchase and long before Cameron sued Shackelford. Shackelford never had the right to remove the houses, nor did he own the land. Appellant had no right whatever to the houses. The facts are undisputed and the court properly directed a verdict.

McCULLOCH, C. J. The facts in this case are undisputed. Appellee owned a tract of timber land in Union County, and conveyed the timber by deed to the Hardwood Dimension Lumber Company, there being a stipulation in the deed that the timber should be removed expeditiously within a period of time not exceeding seven years, and that the grantee should erect a saw mill on the land for the purpose of manufacturing the timber into lumber. A few months subsequent to the execution of the timber deed, and when the lumber company was about to begin performance, it was found desirable to erect the mill and the appurtenant houses and other buildings just across a creek from appellee's tract of land on another tract owned by one Culpepper, it having been expressly agreed between appellee and the lumber company that the buildings should be left on appellee's land at the expiration of the time allowed for removing the timber and thus become the property of appellee, and an additional written contract was then entered into between appellee and the lumber company whereby it was agreed that the houses to be built on the Culpepper land should, at the expiration of the lease, become the property of appellee the same as if the houses had been built as originally intended on appellee's land. The lumber company leased the land from

Culpepper under a written contract which stipulated that the houses built on the land should be and remain the property of the lessee and removable at the end of the lease.

Subsequently it was found necessary for the lumber company to lease an adjoining tract of land from one Wysinger to build houses on, and a contract was entered into between the lumber company and Wysinger whereby Wysinger leased the land to the lumber company with a stipulation concerning the removal of the houses similar to that contained in the Culpepper contract. There was a verbal agreement between appellee and the lumber company with respect to the houses to be built on the Wysinger land to the effect that they should become the property of appellee in accordance with the original contract concerning the construction of the mill plant on the land of appellee. The lumber company, after putting the mill into operation and building numerous houses on the Culpepper and Wysinger lands to be used in connection with the mill plant, sold the mill machinery conditionally to Mrs. Josephine Shackelford and transferred the leases from Culpepper and Wysinger. Mrs. Shackelford subsequently assigned her interest to her husband, F. H. Shackelford.

Appellant is a judgment creditor of Shackelford and caused process to be levied on the houses on the Culpepper land and on the Wysinger land for the purpose of obtaining satisfaction of the judgment. Appellee intervened, and the controversy arises over the priority of their rights in and to these houses which were constructed on the lands aforesaid.

The time for removal of the timber had not expired and the first contention of appellant is that appellee's assertion of the right to the houses is premature. It is true that appellee could await the time of the expiration of the timber contract and then remove the houses as against the claims of all persons, but he was not bound to do so when a conflicting claim was asserted by another person. The houses have not become a part of

the realty on which they were built, but remain the personal property of the builder pursuant to the contract which reserved the right to remove them as trade fixtures. The title, as well as the immediate right to possession is involved in this controversy, and appellee can assert his rights now. If the property belonged to appellee, it is not subject to execution under a judgment against Shackleford, for the latter had at most only a right to occupy the houses while operating the mill under his purchase from the lumber company.

The next contention is that appellant's contract, at least as to the houses on the Wysinger land, is within the statute of frauds and void. The contract between Wysinger and the lumber company, as well as the Culpepper contract, was in writing, and, according to its terms, the houses were to remain the property of the lumber company as trade fixtures. The houses never became a part of the realty, but remained the personal property of the lumber company, which were, under the contract with appellee, to pass to the latter. Now, the contract between appellee and the lumber company with respect to the houses on the Culpepper land was in writing, and there can be no question of the statute of frauds being involved in the controversy concerning those houses. The only question that arises on that subject relates necessarily to the houses on the Wysinger land. Those houses, not being a part of the realty, the statute of frauds concerning the sale or lease of lands does not apply. The houses constituted personal property and the only statute which could, under any circumstances, apply would be that which relates to the sale of chattels. Kirby's Digest, section 3656.

The verbal agreement between the lumber company and appellee did not, however, constitute a contract for the sale of the houses. The original contract in writing between the parties provided for the sale of the houses which were appurtenant to the mill plant, and the verbal agreement referred to merely concerned the change of the contract from building the houses on appellee's land

or on the Culpepper land to building some of them on the Wysinger land. The verbal contract, in other words, relates merely to the place where the houses were to be built, instead of a contract with respect to the ownership of the houses themselves at the time of the expiration of the lease, for, according to the original contract, the houses were to become the property of appellee. That part of the contract not in writing was one which was not within the statute of frauds.

The same answer may be given to the contention that the case falls within the clause of the statute which provides that a "contract, promise or agreement that is not to be performed within one year" must be in writing. Kirby's Digest, sec. 3654, subdiv. 6.

We are of the opinion, therefore, that, the facts being undisputed, and the principles of law being favorable to appellee's claim, the court was correct in giving a peremptory instruction. The judgment is therefore affirmed.