## HUBBARD v. MISSOURI PAC. R. CO.

(District Court, E. D. Arkansas, Jonesboro Division. May 17, 1923.)

1. Courts ⊚=365—Federal courts follow the rulings, if any, of state court as to fixtures.

On a question as to whether property constitutes a fixture or personalty a federal court follows the rulings of the Supreme Court of the state in which the property is situated, but where the Supreme Court of that state has never passed on a similar question the federal court must decide it in accordance with what it conceives the law to be from the weight of authority.

2. Fixtures ⊚=26—Rails constituting spur track held personalty.

Where use of a spur track was discontinued, and the track was disconnected, and a purchaser of the land did not understand that the rails did not pass with the land, the rails were personalty, and belonged to the railroad which constructed the spur.

⊚=For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
288 F.—60

At Law. Action by W. J. Hubbard against the Missouri Pacific Railroad Company. Judgment for defendant.

J. W. Davis, of Memphis, Tenn., and T. H. Caraway, of Jonesboro, Ark., for plaintiff.

Gordon Frierson, of Jonesboro, Ark., for defendant.

TRIEBER, District Judge. This is an action to recover the value of rails removed by the defendant from a side spur on land before then purchased by plaintiff. The removal of the rails was made in February, 1922. The facts, which are undisputed, are that at the request of Mr. Pfrimmer, the then owner of the land, who was erecting a sawmill on his land, defendant's predecessor in the ownership of the railway, constructed a spur track from the main line to the mill, furnishing the rails, fish plates, and spikes. In 1916 the mill ceased operations, but the rails were not removed until February, 1922, after the plaintiff had purchased the tract of land from Pfrimmer, which included the part on which the spur track was situated, as until May, 1921, there was some likelihood of another company desiring to use it. The deed to the plaintiff is an ordinary warranty deed for the entire tract. Whether the rails and other material in this spur track passed to the plaintiff as a part of the realty conveyed, neither counsel nor the court were at the trial ready to have determined.

The court submitted to the jury interrogatories for special findings, counsel agreeing on the interrogatories necessary for the determination of the issues of fact. The interrogatories submitted and the findings of the jury are as follows:

Question 1. When the land was bought by plaintiff, had that spur been disconnected from the main line?
Answer. Yes.
Question 2. If disconnected, when was it disconnected?
Answer. Last of 1918, or January, 1919.
Question 3. What was the condition of the spur track? Was it in condition to operate cars on it?
Answer. No.
Question 4. What was the value of the rails on the land off the right of way of the railroad main line, there having been 23.43 tons? How much a ton?
Answer. $10.00 per ton.
Question 5. Did Mr. Pfrimmer, when he sold the land to plaintiff, tell him the tract would not pass by the sale, and Hubbard understood that it did not pass with the land?
Answer. No.

The question of law reserved was whether, the railroad company having constructed the spur track at the request of the then owner of the land, the rails became a part of the realty, and therefore the property of plaintiff after the purchase of the land to which the rails were attached, the plaintiff believing that they passed with the land, as was found by the jury in response to the fifth interrogatory.

[1] Ordinarily on a question of this nature a national court follows the rulings of the Supreme Court of the state in which the property is situated. Triumph Electric Co. v. Patterson, 211 Fed. 244, 127 C. C. A. 612; New York Life Ins. Co. v. Allison, 107 Fed. 179, 46 C. C. A. 229. But the Supreme Court of Arkansas has never passed on

this or a similar question. This court must therefore decide it in accordance with what it conceives the law to be from the weight of authority. A leading case on that subject is Wiggins Ferry Co. v. O. & M. Ry., 142 U. S. 396, 415, 12 Sup. Ct. 188, 194 (35 L. Ed. 1055). It was there held that:

"They were laid there under a mere easement granted by the petitioner, and obviously with no intention that they should become part of the realty. As between landlord and tenant, or one in temporary possession of lands under any agreement whatever for the use of the same, the law is extremely indulgent to the latter with respect to the fixtures annexed for a purpose connected with such temporary possession. It is incredible that it could have been the intention of the parties that the rails and switches laid upon this ground by the railroad company should become the property of the landlord, when, by the terms of the contract, the ferry company had the right to put an end to it at any time upon six months' notice. In Van Ness v. Pacard, 2 Pet. 137, it was held that a house built by a tenant upon land, primarily for the purpose of a dairy, and incidentally for a dwelling house for the family, did not pass with the land. The earlier authorities are reviewed in that case by Mr. Justice Story, and the conclusion reached that whatever is affixed to the land by the lessee for the purpose of trade, whether it be made of brick or wood, is removable at the end of the term. Indeed, it is difficult to conceive that any fixture, however solid, permanently and closely attached to the realty, placed there for the mere purposes of trade, may not be removed at the end of the term. In the case of Wagner v. Cleveland & Toledo Railroad, 22 Ohio St. 563, it was held that stone piers, built by a railroad company as part of its road on lands over which it had acquired the right of way, did not, though firmly imbedded in the earth, become the property of the owner of the land, as part of the realty, and that upon the abandonment of the road, the company might remove such structures as personal property. So in Northern Central Railroad v. Canton Co., 30 Md. 347, it was held that the rails fastened to the roadbed of a railroad, as well as the depots and other buildings might, under certain circumstances be treated as trade fixtures and removable by the company, if the surrounding circumstances showed that at the time the rails were laid upon the land it was not intended that they should be merged in the freehold. In that case the road was built upon land under a license and permission of the owner. It is entirely clear that the rails in the case under consideration did not become part of the realty, and that the receiver was not guilty of waste in removing them from the land."

In Skinner v. Ft. Wayne, etc., R. R. (C. C.) 99 Fed. 465, on facts similar to those in the instant case, it was held that the rails were personalty and not a part of the realty. In Oman v. Bedford-Bowling Green Stone Co., 134 Fed. 64, 67 C. C. A. 190, Mercantile Trust & Deposit Co. v. Roanoke & S. Ry. Co. (C. C.) 109 Fed. 3, 11, and Western Union Telegraph Co. v. Pennsylvania Co. (C. C.) 125 Fed. 67, 70, like conclusions were reached. The last-cited case was on appeal reversed (129 Fed. 849, 64 C. C. A. 285, 68 L. R. A. 968), but on other grounds; the one herein involved not being passed on by the appellate court.

The same conclusions were reached by practically all state courts. Corwan v. Cowan, 12 Ohio St. 629; Wagner v. Railroad Co., 22 Ohio St. 563, 10 Am. Rep. 770; Northern Central Ry. v. Canton Co., 30 Md. 347, cited with approval in the Wiggins Ferry Co. Case; Railroad Co. v. Morgan, 42 Kan. 23, 21 Pac. 809, 4 L. R. A. 284, 16 Am. St. Rep. 471; Railway Co. v. Dunlap, 47 Mich. 456, 11 N. W. 271; 13 Am. & Eng. Encyc. of Law, 615; 26 C. J. 671, 680, and authorities cited in the notes.

The same rule has been applied to water and gas pipes, and poles and wires for the use of telegraph, telephone, and electric lines; the courts holding that they remained personal property, which the owner may remove after discontinuing operation. Commonwealth v. Lowell Gas Light Co., 12 Allen (Mass.) 75; Dudley v. Jamaica Pond Aqueduct Corp., 100 Mass. 183; Natick Gas Light Co. v. Boston & A. R. Co., 175 Mass. 246, 56 N. E. 292; Boston Electric Light Co. v. Boston Terminal Co., 184 Mass. 566, 69 N. E. 346.

Plaintiff relies principally on Missouri Pacific Ry. Co. v. Bradbury, 106 Mo. App. 450, 79 S. W. 966, decided by the Missouri Court of Appeals, an intermediate court of that state. In that case the court cited and based its conclusions on a former decision of the Supreme Court of that state and on a dictum in Porter v. Pittsburgh Bessemer Steel Co., 122 U. S. 267, 7 Sup. Ct. 1206, 30 L. Ed. 1210. The question in the Porter Case was whether the bridge, which was sold conditionally, with retention of title in the vendor, could be reclaimed by the vendor against a bona fide mortgagee, and it was held that it could not be reclaimed. The ground upon which that case was decided, as explained by a later decision of the Supreme Court (Wade v. Chicago, etc., Railroad, 149 U. S. 327, 341, 13 Sup. Ct. 892, 898 [37 L. Ed. 755]), was that an "after-acquired clause" in a mortgage "covers all acquisitions made to" the mortgaged premises.

[2] The conclusion reached is that the rails in controversy never became a part of the realty, therefore did not pass by the deed of conveyance of the land to the plaintiff, and the defendant had the right to remove them.

It follows that judgment must be for the defendant.