St. Louis-San Francisco Railway Company *v.* White.

4-5626 132 S. W. 2d 807

Opinion delivered November 6, 1939.

J. W. Jamison and Warner & Warner, for appellant.
O. E. & Earl N. Williams, for appellee.

GRIFFIN SMITH, C. J. The question is, May one having possibility of reverter, whose right springs from a grantee's act in discontinuing, for railway purposes, the right-of-way deeded by the reversioner's ancestor, lawfully lay claim to a depot, outhouses, and stock pens placed upon such right-of-way by the railway company?

In 1886 those through whom appellees claim conveyed to appellants' predecessor a strip of land 100 feet wide, to be used ". . . for the construction, operation, maintenance, and use of a railroad over and through [the lands in question"]. There was this provision: "To have and to hold the same unto the said Fayetteville & Little Rock Railway Company, its successors, administrators and assigns as long as the same shall be required and used for railway purposes."

In 1911 a depot was built at Durham at a cost of approximately $1,750. Certain outhouses were erected; and stock pens were made a part of the railway company's facilities for loading.

Because the branch line had been operated during recent years at financial loss, permission to discontinue its use was procured from the Interstate Commerce Commission. Acting under authority so conferred, the railway company (August 7, 1937) began at Pettigrew the work of divesting the right-of-way of worth-while personal property. Coincident with evidence of the company's purpose to dismantle the depot and other struc-

tures, appellees wrote appellants' superintendent informing him that the deed contained a conditional grant; that with abandonment of the railway the easement, ". . . with all appurtenances thereunto belonging, including the depot and all other fixtures that have become a part of said realty reverted." The railway company was requested ". . . not to remove, convey, or disturb any of the buildings."

The request was ignored. Thereupon suit was filed for $2,000 damages. The jury's verdict was for $900, upon which the court rendered judgment. This appeal is from such judgment.

We think the court misconstrued the law applicable to the facts. It should have instructed a verdict for appellants.

The complaint alleges that ". . . plaintiff's predecessors in title conveyed to the said railway company the right-of-way for the construction, operation, maintenance, and use of a railroad." The grantors, in executing their deed to the Fayetteville & Little Rock Railway Company 51 years before the present controversy arose, must have known that in certain circumstances depots and other buildings would be essential to ordinary operation of the railway. There is nothing in the deed indicating an intent upon the part of the grantors to exclude from the demised premises any structures or construction required by the railway; and, conversely, nothing appears evidencing a purpose by the grantors to retain, as a part of the realty, anything placed thereon for railway purposes.

A review of the authorities reveals that various terms are used to identify the interest or estate acquired by a railway company by virtue of a conveyance similar to the one in question. Where the conveying language shows a purpose to authorize construction of a railway with possibility of reverter of the land to the servient estate, it has been held that such instrument creates a determinable fee and transfers the whole title from the grantor so long as the property is used for railway purposes. But the general rule seems to be that if

the deed purports to convey only a right-of-way, it does not convey the land itself, but the fee remains in the grantor, and the railway company acquires a mere easement in perpetuity for railway purposes. Such easement is an interest which is absolute for the purposes for which the land is conveyed so long as it is used for those purposes, .even though the language of the deed may fall short of conveying the fee, as in the case at bar.

In *Graham v. St. Louis, Iron Mountain & Southern Railway Company,* 69 Ark. 562, 65 S. W. 1048, 66 S. W. 344, a deed to the railway company conveyed a right-of-way and depot grounds ". . . so long as said lands are used for the purposes of a railroad and no longer." Although possession was taken and railway operations were engaged in, a part of the land, as shown by the deed, was to be used for "Y" purposes. The deed was executed in 1882. In 1897 Graham undertook to repossess that part of the land intended for a "Y", but upon which no such construction had been undertaken. In the meantime—during a period of 15 years—twelve acres of the land intended for the "Y" had remained in Graham's enclosure. The railway company brought ejectment. Graham defended on the ground that conditions had been broken through failure of the grantee to subject the property to the use intended. The court's opinion was written by Mr. Justice RIDDICK, who said:

"Conditions subsequent are not favored, and must be strictly construed, and we see nothing in this deed that required that the whole tract should be at once used for railroad purposes." On rehearing, in an opinion written by Mr. Justice WOOD, it was said:

"Giving force and meaning to every word and clause in the deed, the most reasonable construction is that deeds of the kind under consideration convey a perpetual easement in the land, or an easement in the nature of a fee. . ."

The Late Judge TRIEBER, in *Hubbard v. Missouri P. R. Co.* (D. C. Ark.) 288 Fed. 945, said: "The conclusion reached is that the rails in controversy never became a part of the realty, therefore did not pass by the

deed of conveyance of the land to the plaintiff, and the defendant had the right to remove them.''

In *Newgass* v. *Railway Company*, 54 Ark. 140, 15 S. W. 188, it was said: ''It is, therefore, not necessary to presume that [when the railway company built its road] it intended either to dedicate it to the use of the land, or to commit another trespass to the damage of the land; but it is more reasonable to presume that it intended to retain the railroad for use as such, and lawfully to acquire the land upon which it rested. The railroad was not built to improve the ground or to enhance its ordinary utility, but to be used as part of an easement for public purposes, entirely independent of the ordinary uses of the ground. . .''

A more recent case is that of *Anderson* v. *Hobbs Tie & Timber Company*, 196 Ark. 805, 120 S. W. 2d 158. A paragraph from the opinion is: ''The bridge was on a right-of-way, which had been acquired by appellee's predecessor of title, at least under an easement that continued until all of the property constituting the line of railway had been removed or a reasonable time given for that purpose.''

Cases upholding the position here taken, or persuasive of the principle invoked, are shown in the margin.[1]

Appellees quote Tiffany on Real Property, vol. 1, p. 192, § 81, where it is said that ''when land is granted for certain purposes, as for a schoolhouse, church, public building, or the like, and it is evidently the grantor's intention that it shall be used for such purposes only,

[1] *Helena & L., S. & F. Co.* v. *N. P. R. Co.*, 62 Mont. 281, 205 Pac. 224, 21 A. L. R. 1080; *I. C. R. Co.* v. *Hoskins*, 80 Miss. 730, 32 So. 150 92 Am. St. Rep. 612; *Hatton* v. *K. C. Ry. Co.*, 253 Mo. 660, 162 S. W. 227; *Corwin* v. *Corwin*, 12 Ohio St. 629; *Wagner* v. *Cleveland, etc. Ry. Co*, 22 Ohio St. 563, 10 Am. Rep. 770; *McNair* v. *Rochester, etc., Ry. Co.*, 59 Hun. 627, 14 N. Y. Supp. 39; *Talley* v. *Drumheller*, 143 Va. 439, 130 S. E. 385; *Wiggins Ferry Co.* v. *O. & M. R. Co.*, 142 U. S. 396, 12 S. Ct. 188, 35 L. Ed. 1055; *Cranor* v. *Lake Erie, etc., R. Co.*, 83 Ind. 449, 149 N. E. 97. On the question whether fixtures may be removed, see *Field* v. *Morris*, 95 Ark. 268, 129 S. W. 543; *Barnes* v. *Jeffus*, 173 Ark. 100, 291 S. W. 990; *Choate* v. *Kimball*, 56 Ark. 55, 19 S. W. 108; *Bank of Mulberry* v. *Hawkins*, 178 Ark. 504, 10 S. W. 2d 898; *Sessoms* v. *Ballard*, 160 Ark. 146, 254 S. W. 446; *Cameron* v. *Robbins*, 141 Ark. 607, 218 S. W. 173; *Bennett* v. *Taylor*, 185 Ark. 795, 49 S. W. 2d 608; *Witherspoon* v. *Nichols*, 27 Ark. 332; *Cantley* v. *Edens*, 190 Ark. 445, 79 S. W. 2d 280; *Austin* v. *Federal Land Bank*, 188 Ark. 971, 68 S. W. 2d 468. See, also, *East Ala. R. Co.* v. *Doe*, 114 U. S. 340, 5 S. Ct. 869, 29 L. Ed. 136; 22 R. C. L., § 12, p. 860; *Brightwell* v. *International Great N. Ry. Co.*, 121 Tex. 338, 49 S. W. 2d 437, 84 A. L. R. 271; *Skinner* v. *Ft. Wayne, etc., R. Co.*, (C. C. Ind.) 99 Fed. 465; 22 American Jurisprudence, § 53, p. 768; *Wagner v. C. && T. Ry. Co.*, 22 O. St. 568, 10 Am. Rep. 770.

and that, on the cessation of such use, the estate shall end, without any reentry by the grantor, an estate of the kind now under consideration [determinable fee] is created.'' Other authorities to which attention is called in appellees' brief are printed in the footnote.[2]

Appellees rely entirely upon the well-established rule that where land is conveyed upon the express condition that it shall be used for a stated purpose, and for no other purpose, and there is a failure to perform or abide the conditions, title reverts to the grantor because of a violation of the conditions. In support of this rule we are cited to *St. Louis Southwestern Ry. Co. v. Curtis*, 113 Ark. 92, 167 S. W. 489, a headnote of which is: ''A deed of land to a railroad company for the erection and maintenance of a section house thereon, providing that when it should cease to be used as such the title to the land should revert to and vest in the grantor, was not an absolute conveyance, but expressed a condition subsequent, upon the happening of which the title reverted to and vested in the grantor.'' The opinion, however, as distinguished somewhat from the headnote, says: ''The qualified or base fee which the appellant [railway company] had under the deed terminated upon the breach of the condition subsequent. The evidence shows that the condition subsequent was not complied with, and that the estate reverted before appellant moved the house from the land. Upon a breach of the condition subsequent, *ipso facto* the title reverted and was vested in the appellee, and it was not necessary for the appellee to take possession of the land in order to effect a forfeiture for failure on the part of the appellant to comply with the

2 *R. N. Magness v. Henry A. Kerr*, 121 Ore. 373, 254 Pac. 1012, 51 A. L. R. 1466; 23 R. C. L., p. 1104; *Abercrombie v. Simmons*, 71 Kas. 538, 81 Pac. 208, L. R. A., U. S. 806, 114 Am. St. Rep. 509, 6 Ann. Cas. 239; *Santa Fe, L. & E. Ry Co. v. Laune*, 67 Okla. 75, 168 Pac. 1022; *Orth v. Gregory*, 98 Okla. 229, 223 Pac. 385; *Epworth Assembly v. Ludington & N. R. Co.*, 236 Mich. 565, 211 N. W. 99; *Noble et al. v. Okla. City, Higgins, et al., v. Same*, 297 U. S. 481, 56 S. Ct. 562, 80 L. Ed. 816; *Stevens et. al. v. Galveston, H. & S. A. Ry. Co.*, Tex. Civ. App., 169 S. W. 644; *Pettit v. Stuttgart Normal Inst'tute*, 67 Ark. 430, 55 S. W. 485; *Alexander et al. v. Morris & Co.*, 168 Ark. 31, 270 S. W. 88; 16 Am. Jur., p. 570; 19 Am. Jur. 526, notes 6, 7, and 8; *Young v. Oviatt*, 35 Pa. Sup. Ct. 603; Jones on the Law of Real Property, V. 2, par 1668-69; *Ozark v. Adams*, 73 Ark. 227, 83 S. W. 920; *Hoye Coal Co. v. Colvin*, 83 Ark. 528, 104 S. W. 207; *K. C. So. Ry. Co. v. Anderson*, 88 Ark. 129, 113 S. W. 1030, 16 Ann. Cas. 784, and others.

condition. *Moore* v. *Sharp*, 91 Ark. 407, 121 S. W. 341, 23 L. R. A., N. S. 937.''

The opinion goes on to say that the clearly expressed intention of the parties as gathered from the language of the deed was that the building should be erected on the land and used as a section house, ''and this being the very purpose of the deed, the trial court was correct in holding as a matter of law, under the language of the instrument, that the section house was a fixture.''

We think the decision in the Curtis Case turned on the language of the deed. It was: ''This deed is made for the purpose of erecting and maintaining a section house on the above described land by the grantee herein, and when it shall cease to be used as such, the title to the land shall revert to and vest in said S. H. Curtis.''

The expression in the deed, ''. . . when *it* shall cease to be used as such . . .'' had reference to the section house. Since the very purpose of the transaction was to build a section house, the house became a fixture.

No such intent is shown or intimated in the deed executed by appellees' predecessors in the instant case. To grasp the purpose of the parties, as reflected by their writing, it is necessary to place one's self in the position of John S. and Mary Ann White when they executed the conveyance in 1886. Clearly, they contemplated use of a 100-foot strip of land for railway purposes, including those incidental uses which efficient operation of the line might require; and they expected—perhaps very remotely—to enjoy revestiture if the project should not be consummated, or if the road should be constructed and then discontinued. If appellees are entitled to the depot and other buildings, they are equally entitled to the crossties and steel rails. We cannot believe they had any thought of claiming property of this character when they executed the deed.

Inasmuch as the deed provided a possibility of reverter only, we must hold that the reversion includes only the demised lands, without the operating appurtenances of appellants.

The judgment is reversed, and the cause is dismissed.