## RITTER *v*. THOMPSON.

### Opinion delivered February 26, 1912.

1. RAILROADS—CONVEYANCE—"FOR RAILROAD PURPOSES ONLY."—A conveyance of land "for railroad purposes only" entitles the company to the use and possession of the entire tract so long as any part of it is used for such purposes. (Page 445.)

2. FORFEITURE—WHEN WAIVED.—Any conduct on the part of one having the right to declare a forfeiture which is calculated to induce the other party to believe that a forfeiture is not to be insisted upon will be treated as a waiver. Thus, where plaintiff granted a strip of land to a railroad company "for railroad purposes," and thereafter for four or five years acquiesced in the railroad company granting licenses to various persons to use portions of such strip and permitted such licensees to make improvements thereon, and accepted licenses himself for portion of such land, he will be held to have waived any right that he might have had to declare a forfeiture. (Page 446.)

Appeal from Poinsett Chancery Court; *Edward D. Robertson*, Chancellor; affirmed.

#### STATEMENT BY THE COURT.

Appellant instituted this suit in the Poinsett Chancery Court, and alleged, in substance, that on the 22d day of July, 1898, he was the owner of, and by deed of that date conveyed to the Kansas City, Fort Scott & Memphis Railway Company, a strip of land situated in Marked Tree, Poinsett County, Arkansas, which he described in his complaint. He alleged that the grantee in the deed subsequently conveyed its interest to the St. Louis & San Francisco Railway Company, one of the ap-

pellees; that the deed was without consideration, and was made for the exclusive use by said railway company for railroad purposes; that the appellee Thompson had known at all times the conditions of the deed limiting the grant for railroad purposes only; that, notwithstanding such knowledge, he had secured from his codefendant, the railway company, numerous grants and conveyances under which he claimed to be authorized to construct and occupy upon the railroad right-of-way embraced in the deed certain buildings, a map and plat of which he attached to his complaint. He alleged that Thompson was threatening to erect and occupy other and additional buildings on the right-of-way. He averred that at the time he conveyed the land to appellee railway company he owned and occupied, by tenants, a number of buildings upon the land adjacent to the right-of-way, and that the buildings erected by Thompson and the ones which he was threatening to erect would endanger appellant's buildings and subject them to additional loss and damage by fire. He prayed for a temporary restraining order, and that same, upon final hearing, be made perpetual; that the lease covenants between the appellees be cancelled, and that the appellee railway company be perpetually enjoined from issuing other leases of a similar character.

The appellees answered separately, denying the allegations of the complaint, admitting the execution of the right-of-way deed, but denying the alleged legal effect of the limitation contained therein; admitting the execution of the various licenses by appellee railway company to appellee Thompson and others, but alleging that same were with appellant's approval and consent.

The answers set up estoppel, laches and waiver in that for many years the appellee railway company had granted licenses to many persons, including appellant; that many buildings of great value had been erected under said license, and with the knowledge and encouragement of appellant.

On the 10th of December, 1888, C. W. Frazier and wife by deed of that date, conveyed to the Kansas City, Fort Scott & Memphis Railway Company the land in controversy, and after the conclusion of the description of the land in the deed is the following: "For the use of said company as railroad line purely, excluding all other uses and purposes of said land, and

not to conflict with any sale heretofore made of land included in said limits."

Appellant claims title to the land in controversy from the same source of title, and also from an alleged tax title. After acquiring his deeds he conveyed to the Kansas City, Fort Scott & Memphis Railway Company the land in question, on July 22, 1898. The deed recites that, for and in consideration of the sum of one dollar paid by the railway company, "they (he and his wife) do hereby grant, sell and quitclaim unto said railway company, and unto its successors and assigns forever, the lands (describing them) for railroad purposes only.

Appellee railway company succeeded to whatever rights the Kansas City, Fort Scott & Memphis Railway Company had in the land in controversy, and the appellant succeeded to whatever rights the original grantor, Frazier, had.

*Going & Brickerhoff*, for appellant.

1. The deeds conveyed an easement only. 10 Atl. Rep. 522; 5 N. W. 484; 53 *Id.* 807; 64 *Id.* 572; 61 *Id.* 342; 14 S. W. 538; 24 *Id.* 234; 1 N. E. 420; 46 N. W. 240; 35 N. W. 862; 74 N. E. 812; 53 So. 22; 111 Pac. 578.

2. The right of re-entry was assignable. Wash. on Easements (4 ed.) 292. It is not limited to the grantor's heirs but extends to his assignees. 38 Pac. 1126. Any interest in real estate may be conveyed. 14 Ark. 489; 3 Metc. 163; 44 Ark. 153; 91 *Id.* 407.

3. Appellant is not estopped; the essentials of an estopped are wanting. Bigelow on Estoppel, 484. A party must be actually deceived or misled to his injury by the conduct of another, and the latter must intend that his conduct should be acted upon. 56 Ark. 217; 54 *Id.* 465; 58 *Id.* 20; 53 *Id.* 545; 51 *Id.* 52; 109 Mass. 53. Something more than mere silence or inactivity is needed. 39 Ark. 131. The mere failure to institute proceedings is not sufficient. 63 Ark. 300.

4. Appellant has not waived his rights. See authorities on estoppel. The case of 77 Ark. 168 is not in point. The facts are too dissimilar.

*Lamb & Caraway*, for appellees.

1. The words "for railroad purposes" in a fee simple deed do not arise to the dignity of a condition subsequent,

entitling appellant to re-enter for condition broken; they mean nothing more than for the use and benefit of the railway company. 46 N. J. L. 536; 17 Pac. 580; 13 *Id.* 890; 7 Allen (Mass.) 125; 20 Ind. 398; 12 N. E. 607; 98 N. Y. 665; 37 N. E. 650; 23 Pac. 98; 46 N. J. L. 536; 40 N. E. 587; 68 Ky. 330; 28 N. E. 442; 39 Conn. 54; 27 N. E. 162; 34 Mich. 163, 169-70; 77 Ark. 168; 38 Ga. 202; 223 Pac. 98-100; 43 N. E. 1076.

2.  Conditions which operate as a forfeiture are not favored in law. The language is most strongly construed against the grantor. 50 Ark. 141; 38 Wis. 165; 23 Pac. 93; 27 N. E. 162; 40 *Id.* 587; 77 Ark. 168.

3.  Appellant is barred. 59 Ark. 405; 77 *Id.* 168; 51 *Id.* 491; 135 S. W. 905; 73 N. E. 74; 106 N. W. 456; 114 *Id.* 151; 43 N. E. 1076; 96 Pac. 284; 55 Mo. 392; 99 C. C. A. 286.

WOOD, J., (after stating the facts). 1. The appellant contends that the language used in the deed to appellee railway company, "for railroad purposes only," had the effect of limiting the use of all the lands mentioned in the deed to the purposes of an easement only; that the deeds conveyed an easement in the land, and that when the railway company ceased to use the entire tract conveyed or any part thereof for the purposes of its easement the appellant, being the owner of the land in fee, had the right to re-enter and take possession of the part that was not used as an easement.

In our construction of the deed it becomes unnecessary to determine whether or not its effect was to convey the fee-simple title to the railway company. The deed, in our opinion, conveyed to the railway company the entire strip of land mentioned therein; and, so long as any part of the same was being used for railroad purposes, appellant could not enter and take possession of any part that might not be used for the easement or right-of-way. See *Morrell* v. *Wabash, St. Louis & Pacific Ry. Co.*, 96 Mo. 174. The deed was entire; and, so long as the railway company was using any portion of the strip of land conveyed for its right-of-way or easement, it had the right to the use and possession of all of it.

It will be noted that the clause in the deed is not "for right-of-way," but *"for railroad purposes."*

The uncontradicted evidence shows that the grants under

which appellee Thompson and others occupied portions of the land in controversy were mere licensees. They were only tenants at will; they had no leases for any definite time. There is nothing in these licenses to show that the appellee railway company had abandoned any portion of its premises for railroad purposes. The witness testified that "under these licenses the parties simply held at our will. The licenses is revocable at sixty days' notice, and that precaution is taken to avoid any contention that they might constitute an abandonment. Persons go on there with the understanding that with sixty days' notice they must move their improvements and get off, and for the further reason that no railroad company can determine its needs at any definite time in the future at any particular point."

Conceding, without deciding, that the clause "for railroad purposes only" is in the nature of a condition subsequent giving the grantor the right to re-enter upon condition broken, we are of the opinion that the testimony does not show such breach of the condition as to entitle appellant to re-enter or to have the relief sought in this case.

2. On the same day that the appellant executed his deed to the Kansas City, Fort Scott & Memphis Railway Company, he entered into an agreement whereby, in consideration of a pass over the company's road, he undertook to sign court bonds for the company and also "to act as agent to watch and warn trespassers from encroaching on its right-of-way at Marked Tree."

In 1903, according to appellant's testimony, the appellee Thompson, erected a hardware and furniture store about fifty feet from the track of the railway company. Appellant personally notified Thompson of his claim; told him he had deeded the land to the railway company for railroad purposes only, and protested that appellee Thompson had no right to build on it. Thompson replied that he had a lease from the company, and was amply protected, and he kept on building on the right-of-way over appellant's protest and objection until appellant had him enjoined. The agent of the appellee company, having its land matters in charge at Marked Tree, as early as the latter part of October, 1905, went to Marked Tree and saw the appellant. The agent on this first visit had consider-

able conversation with the appellant. Appellant called his attention to the provisions in the deed, and out of that conversation grew the special clause that went into appellant's licenses, which is as follows: "It is understood and agreed that in all instances where the title of the railway company is such that the property shall revert to the grantor in case of nonuse for railroad purposes this lease is made subject thereto, and by reason of its acceptance by the licensee he shall forfeit no right nor shall his interest be in any wise prejudiced."

Other licenses were being granted to various parties at that time. The proof shows that on October 18, 1905, licenses were granted to the appellee Thompson for the erection of five buildings, one on the main line and four on the Marked Tree spur. There had been many buildings erected on the land in controversy under licenses from the railway company. Various parties besides the appellee Thompson had erected structures. Some of the parties to whom licenses were granted testified that appellant objected to their building on the land, calling attention to the fact that he had conveyed the property to the railway company for railroad purposes only.

Parties had made known to the land agent of the railway company these objections. When the land agent went to Marked Tree in October, 1905, he spent the entire day going over the ground. Appellant went with him across the street to where he had some property, and where some other party had property that appellant wished to show him. Appellant was interested in the property that he showed him. The land agent talked with appellant generally. The agent stated that, while appellant called his attention to the provisions in the deed, he made no objection whatever at that time to the parties building on the right-of-way. Parties wishing licenses had informed the land agent that appellant was protesting, and the agent had gone to Marked Tree to look over the ground and see about it.

Witnesses on behalf of appellant testified that, while there had been buildings of different kinds and by various parties upon the land in controversy, it had been generally known that appellant had always objected. One of the witnesses stated that "Ritter" (appellant) had always refused permission to

build or construct buildings on the railroad right-of-way, and that the common talk had been that, in order to put up a building on the railroad right-of-way, the parties would have to catch Mr. Ritter out of town." This witness testified that "the bank, the Miller building Dr. Taylor's brick building, Thompson's saloon, hardware store, pressing shop, restaruant, barber shop, and butcher shop were within one hundred feet of the center of the track, on the south side of the Marked Tree spur; that the Grossman brick, and servant's house, and coal house are on the land in controversy; that all of these buildings, except the Miller building, had been erected within the last nine years, the last one being the Thompson & Powell lumber shed, being built about a year ago."

He further testified that the "Fisher & Smith building, Marked Tree Gazette building, the Doctor Mitchum building were within 100 feet of the main line; also the Phoenix Hotel, the coal chute, handle factory, and the Marked Tree Lumber Company offices and fences were within fifty feet of the box factory spur."

The appellant himself testified "that since the deed was executed to the company he had intended to impress every one of his rights and of his intention to enforce them, and of his objection to the erection of buildings on the right-of-way in violation of the provisions of his deed. He said that he believed that he had the right to restrain the execution of the leases all the time. At the time of the institution of the present suit appellee Thompson was threatening to construct a one-story frame building on the right-of-way which would increase appellant's insurance rate, and so he brought the suit." He said that "the reason for his making objections to the erection of buildings by appellee Thompson was that he (Thompson) was simply putting up fire traps which had a number of times canceled his insurance on the brick which appellant had erected, and was making the rate very high."

One of the witnesses for the appellant testified that the buildings erected by Thompson on the right-of-way were of a character to increase the danger of a general conflagration in the town and would increase the insurance rates on appellant's property. But this witness stated that the danger was no greater at the time of the institution of this suit than it was at

the time the buildings were first constructed; and the witness added: "I don't know why he didn't prevent by lawful means, if he had the right to so do, the construction of these buildings at that time."

The attorney for the appellee railway company stated that as early as 1902 appellant, as the agent of the railway company at Marked Tree to look after the matter of encroachments upon its right-of-way, assisted him in getting two parties off of the right-of-way in a certain place and in locating them in another. These parties were setting up some claim adverse to the railway company, and appellant assisted the attorney in disposing of the matter. The attorney testified that from then until November, 1909, when appellant wrote him with reference to Thompson, he had no intimation that anything was being done in connection with the right-of-way at Marked Tree displeasing to appellant. The attorney sent the letter of appellant to their land agent at St. Louis. This agent testified that he didn't recall any protest from appellant from 1902 to 1911, except the Thompson one.

The appellee, Thompson, testified that, with the exception of himself, he had never heard of appellant making any objection to any buildings on the right-of-way other than that of two other parties. He said that the reason that he didn't refrain from erecting other buildings after 1904, when the appellant first objected, was that many other swere building, including appellant himself. His testimony was to the effect that appellant made no objection to the buildings on the right-of-way on the ground of insurance, and that the buildings which appellant himself had erected on the right-of-way had increased the rate of insurance.

The above testimony shows that on the very day appellant conveyed the land in question to the railway company he accepted a position as their agent to "watch and warn trespassers from encroaching on its right-of-way at Marked Tree." Appellant, of course, was aware, at the time he executed the deed containing the clause "for railroad purposes only," of whatever rights that clause gave him. If appellant's contention were correct, that the clause "for railroad purposes only" gave him the right to repossess himself of the land when the appellee railway company granted licenses to other parties to

occupy portions of the land granted, and to restrain the railway company from granting such licenses, then appellant had the right, at least as early as the year 1904, to prevent the railway company from granting to appellee Thompson a license to erect buildings on the land, as well as to prevent Thompson from consummating any such purpose. Notwithstanding this fact, appellant, during all these years, stood by and permitted appellee railway company not only to issue licenses to appellee Thompson but to others; permitted them to erect structures of various kinds on the premises, and not until the bringing of this suit November 16, 1909, did he take any steps towards availing himself of the right which he now contends the clause under consideration gave him. Appellant knew, during all these years, of the construction which the appellees were placing upon the deed which he had executed to the railway company; he knew that the railway company was claiming the right to grant these licenses, and that appellee Thompson was claiming the right to accept them.

Appellant, during all these years, was accepting similar licenses from the railway company, and was exercising the rights which these licenses granted him. We think his conduct, under the circumstances, shows clearly that he acquiesced in the construction which the appellees placed upon his deed, and that he is estopped from setting up the construction for which he now contends.

After appellant had granted the land mentioned in his deed to the railway company "for railroad purposes only," he accepted many licenses from the railway company and erected and occupied buildings under those licenses, thus clearly recognizing the right of the railway company to grant licenses to him for the purpose indicated. But by his present contention he assumes the anomalous and rather inconsistent attitude of saying that, while the appellee railway company had the right under his deed to grant licenses to him, it has no right to grant precisely similar licenses to other persons.

When appellant first had knowledge that the appellee railway company was granting these licenses, and that the grantees were operating under them, necessarily spending considerable sums of money in making their improvements, it was the duty of appellant to have given notice, not only to the

persons holding such grants from the railway company, but also to the railway company, that he intended to assert his rights if the parties so notified ignored such notice and proceeded to assert rights which they claimed to have under the licenses. It was the further duty of appellant, within a reasonable time, to have taken steps to enjoin them. This he did not do.

Appellant's conduct, as disclosed by the facts above set forth, was well calculated to induce the appellees, especially the appellee railway company, to believe that appellant would not insist upon the right to repossess himself of the land or to prevent appellee railway company from using it in the manner indicated. If he ever had any such rights as he now claims under the clause "for railroad purposes only" contained in his deed, the clear preponderance of the evidence shows that by his conduct he has waived any right to assert them.

In *Kampman* v. *Kampman*, 98 Ark. 328, the court, speaking through the Chief Justice, said:

"Conditions which operate as a forfeiture of rights under a deed are not favored in the law, and slight circumstances will often be seized upon to prevent such forfeitures. Any conduct on the part of the party having the right to declare a forfeiture which is calculated to induce the other party to believe that the forfeiture is not to be insisted upon will be treated as a waiver." See also, *Reichardt* v. *St. Louis & S. F. Ry. Co.*, 51 Ark. 491; *Little Rock Granite Co.* v. *Shall*, 59 Ark. 405; *Bain* v. *Parker*, 77 Ark. 168.

The decree is correct, and it is affirmed.

Mr. Justice HART concurs on the ground of estoppel.