MILLER *v.* EMPIRE RICE MILLS, INC.

5-1554                                                312 S. W. 2d 925

Opinion delivered May 5, 1958.

*Shaver & Shaver,* for appellant.

*Barrett, Wheatley, Smith & Deacon* and *James Robertson,* for appellee.

PAUL WARD, Associate Justice. The principal issue on this appeal relates to election of remedies. The record contains numerous pleadings and considerable testimony but, because of the conclusions hereafter reached, a brief resume of each is deemed adequate.

On June 15, 1892 Charles M. Daggett and Leonard S. Briggs (their wives joining) executed a deed to the St. Louis Southwestern Railway Company conveying a

strip of land (part of which is the subject of this litigation) 3,000 feet long north and south (or nearly so) and 350 feet wide. This strip of land is on the east side of and adjacent to the right-of-way of the Railway Company and a portion thereof lies within the corporate limits of the town of Fair Oaks in Cross County. Following the description, the deed contains these words: . . . "to be used exclusively for Rail Road yards and other Rail Road purposes."

The seeds of this litigation were sown in 1948 when the Railway Company deeded a portion of the land to a company (or corporation) for the erection of a rice mill. This company was known by different names at different times, which is immaterial for this opinion, but it is now known as the Empire Rice Mills, Inc. We shall hereafter refer to it as Rice Mills. On June 4, 1948 the first deed was executed to Rice Mills, conveying what we shall call Parcel No. 1. This parcel described in the deed by metes and bounds, is in the shape of a parallelogram, 450 feet north and south and 312 feet 8 inches east and west, consisting of 3.23 acres. It lies along the Railway Company's right-of-way (in fact, includes a few feet of the said right-of-way) and extends east to within 60 feet of the east boundary line of the 3,000 foot strip first mentioned.

It seems that Rice Mills began construction of its plant on Parcel No. 1 a short while before it received its deed, and that soon after the deed was received its attorney discovered the restrictive language in the deed to the Railway Company. At any rate Rice Mills evidently thought it had not received a fee title to Parcel No. 1, and that the heirs of Charles M. Daggett owned a one-half interest in said parcel by virtue of said restrictive language in the deed to the Railway Company. It must be stated here that the Railway Company had by this time obtained quitclaim deeds from all the heirs of Leonard S. Briggs.

After the above situation became known, the Railway Company, on June 10, 1949, executed its deed to Rice Mills reconveying Parcel No. 1 and also conveying Par-

cel No. 2. Parcel No. 2 had exactly the same corresponding dimensions as Parcel No. 1 and adjoined it on the north side. In other words, the south boundary line of Parcel No. 2 coincided with the north boundary line of Parcel No. 1. According to the Daggett heirs, appellants herein, the last deed was a part of a plan by appellees to deprive them of their undivided one-half interest in the two parcels. Presumably appellants believe the "plan" was to force them to accept Parcel No. 2 in lieu of an undivided one-half interest in the value of both parcels, upon a partition suit. The record reveals that Rice Mills has placed improvements on Parcel No. 1 of a value approximating $250,000.

*Pleadings and procedure.* On August 25, 1949 Rice Mills instituted a partition suit against appellants involving Parcels No. 1 and No. 2. It was alleged that each party owned an undivided one-half interest in the two parcels consisting of 5.89462 acres. (The deed to Rice Mills described 6.46 acres, but allowance was made for the part overlapping the right-of-way). It was further stated that it would be for the best interest of all to divide the land in kind. The prayer was that appellants be given Parcel No. 2 and the Rice Mills be given Parcel No. 1 where the rice mill was located.

On September 26, 1949 appellants filed a general denial and Cross-Complaint, and also asked that the Railway Company be made a party to the litigation. The Cross-Complaint sets out the deeds to the Railway Company with the restrictions and also the deeds from the Railway Company to Rice Mills; that the Railway Company used all the land for railroad purposes until it made the deeds to Rice Mills; that thereby it forfeited all its right to the entire strip of land; that the execution of the deeds by the Railway Company to Rice Mills was a scheme to deprive them of their rights. The prayer was that appellants be awarded a one-half interest in value in Parcels No. 1 and No. 2, and the same interest in the rest of the 3,000 foot strip of land. The Railway Company answered, admitting the execution of the deeds in question, but denying they had forfeited their

right to the rest of the large strip or that they had planned to deprive appellants of any rights. The prayer was that appellants take nothing.

On July 26, 1955, Rice Mills answered appellants' Cross-Complaint, admitting appellants' interest in Parcels No. 1 and No. 2, but stating it had made valuable improvements on Parcel No. 1 and that Parcel No. 2, not counting improvements, was equal in value to Parcel No. 1. The prayer was that Parcel No. 1 be given to Rice Mills and Parcel No. 2 be given to appellants.

A great deal of testimony was introduced at the trial on the above pleadings, and the cause was submitted to the court for its decision on July 27, 1955. Before the court announced its decision, and on January 5, 1956, Rice Mills filed a Motion in which it was stated that the appellants had refused to take Parcel No. 2 but wanted one-half in value of both parcels; and that the Railway Company paid value for the large strip of ground, which brought the case under consideration squarely within the holding in *Davis* v. *St. Joe School District of Searcy County,* 225 Ark. 700, 284 S. W. 2d 635. The prayer was that Rice Mills be given ". . . the permission of the court for the withdrawal of the submission of the above case on partition and permission to re-draft its pleadings in the light . . ." of the above mentioned decision, and ask simply to have its title quieted against the Daggett heirs.

Over the strenuous objections of appellants, the court granted the above motion and permitted Rice Mills to file new pleadings in which it sought to quiet title to Parcels No. 1 and No. 2. The basis of this new suit was the contention that the restrictive language in the deed to the Railway Company merely amounted to a covenant, for a breach of which an action for damages might lie if violated, and not to a defeasible conveyance which would revert to the grantors (the Daggett heirs in this instance) in the event the land was not used for railroad purposes.

The position taken at all times by appellants was that Rice Mills and the Railway Company had, by their first pleadings, elected their remedy by treating the deed to the Railway Company as a defeasible conveyance and by admitting appellants held a one-half interest upon breach of the condition therein, and that the court had no right to permit them to choose another remedy.

Without further testimony the trial court, on June 5, 1957 (almost eight years after the filing of Rice Mills' first complaint), (a) quieted title in Rice Mills to Parcels No. 1 and No. 2 against all claims of appellants, and (b) quieted title in Railway Company to the rest of the 3,000 foot strip of land. It is our conclusion that the trial court erred in both instances.

*As to Rice Mills.* When Rice Mills accepted the deed to the two parcels of land it then stood in the same position as to its title as the Railway Company. As to these two parcels, it is obvious that they were no longer used for railroad purposes. At that time it had the right and option to treat its title as a fee (subject to possible damages for a breach of covenant) and sue to quiet title, or it had the right and option to treat its title as defeasible and sue for a partition. It is obvious, from the pleadings, that Rice Mills elected to pursue the latter course, and we think it is bound by that election. This court has on many occasions considered the question of election of remedies.

In *Belding* v. *Whittington,* 154 Ark. 561, 243 S. W. 808, appellant brought a suit in Circuit Court for breach of a contract relating to the purchase of real property, and then dismissed the suit without prejudice. Later he filed a suit in Chancery Court for specific performance of the same contract. This court, in holding that appellant by electing the first remedy was barred from maintaining an action for specific performance, approved the following statement from *Bush* v. *Barksdale,* 122 Ark. 262, 183 S. W. 171:

''The principle that an election of remedies is irrevocable seems too plain for argument to the contrary, and

its application to the proceeding now under discussion is obviously proper. In 20 *Corpus Juris,* at page ·38, the authors make this statement: 'An election, once made between coexisting remedial rights which are inconsistent is not only irrevocable and cannot be withdrawn without due consent, even though it has not been acted upon by another to his detriment, but it is also conclusive and constitutes an absolute·bar.' Among numerous authorities cited to support the text is the case of *Bush* v. *Barksdale, supra."*

Where a similar question was presented in *Sutterfield* v. *Burbridge,* 223 Ark. 854, 268 S. W. 2d 900, the court, in holding the same conclusion, said:

"Appellants are correct in their contention that since Burbridge had made his election of remedies and sued for damages, he could not thereafter shift his ground and sue for specific performance, although he had taken a non-suit in the suit asking for damages." *Belding* v. *Whittington,* 154 Ark. 561, 243 S. W. 808.

This court, in *Bigger* v. *Glass,* 226 Ark. 466, 290 S. W. 2d 641, approved the following rule from Elliott on Contracts:

"It is the doctrine of election of remedies that one having the choice of two or more inconsistent remedies for his relief is bound by his selection of the remedy he will pursue, and he cannot thereafter avail himself of the other remedies."

In *Roy* v. *Notestine,* 216 Ark. 447, 226 S. W. 2d 66, it was noted "there was a conflict in the authorities as to whether the mere commencement of an action constitutes an irrevocable election to pursue alternative and inconsistent remedies." The court then adopted the rule heretofore announced.

Some authorities state that the above rule does not apply where the pleading is based on mistake of facts. We need not however pursue the implication of that exception here because it is not contended Rice Mills did not have knowledge of all material facts. It is obvious

also we think, that the two attempted remedies were inconsistent. The choice of remedies open to Rice Mills depended on an interpretation of the legal effect of the restrictive language in the conveyance to the Railway Company. It can of course be said that the law pertaining to such interpretation was changed by the opinion in the *St. Joe School District* case, *supra*. Under Rice Mills' first interpretation of the effect of said deed, reflected by its initial pleadings, it was conceded that appellants owned an undivided one-half interest in the two parcels of land. That remedy was certainly inconsistent with a pursuit of the second remedy which denied appellants any interest in the land.

We agree with Rice Mills that appellants are not entitled to an undivided one-half interest in the present value of Parcels No. 1 and No. 2. It appears to us from the record that Rice Mills acted in good faith in placing the valuable improvements on Parcel No. 1. The case has been fully developed on the relative value of the two parcels exclusive of the said improvements, and it appears that Parcel No. 2 is equal in location, size and value to Parcel No. 1, and the court is directed, on remand, to place the title to Parcel No. 2 in appellants, and Parcel No. 1 in Rice Mills.

We do not agree that appellants are now estopped to claim Rice Mills made its election of remedies merely because they refused to accept Parcel No. 2 in full settlement of their claim. The reason we do not agree is that appellants, under the first pleadings, were contending for an undivided one-half interest in both parcels and the improvements, and so their refusal to accept less was in no way inconsistent.

*As to Railway Company.* Under the view above expressed and under the original pleadings, the right of the Railway Company to peaceably continue in possession of the rest of the 3,000 foot strip was not in litigation. It was admitted by appellants that this land was being used by the Railway Company. Nor do we find anything in the pleadings indicating it made an *election* of remedies. It is still free to elect any remedy it

chooses should the occasion arise. The Railway Company did ask for a declaratory judgment to quiet its title in an answer filed after the cause was re-opened, but we think that issue was not properly before the court at that time. No further testimony was taken after an attempt to raise the issue, and certainly it appears that appellants meant to rely on the issues as they were first joined. Under all these circumstances we think it would be preferable to postpone a construction of the deed to the Railway Company until there is a breach of the restrictive language therein, or until some other occasion makes such construction necessary. Consequently the decree of the trial court quieting title in the Railway Company to the remainder of the 3,000 foot strip in question must be, and it is hereby, reversed.

Therefore the decree is reversed, and the cause is remanded with directions to enter a decree in conformity with this opinion.

GEORGE ROSE SMITH and ROBINSON, JJ., dissent.

GEORGE ROSE SMITH, Associate Justice, dissenting. I think it a mistake to say that the case involves an election of remedies; what we are concerned with is whether there has been an election between substantive rights. "A choice between remedies for an injury must be distinguished from a choice between substantive rights and privileges." Rest., Contracts, § 381, Comment d.

The cases cited by the majority involve a true election between remedies. For instance, in *Belding* v. *Whittington*, 154 Ark. 561, 243 S. W. 808, 26 A. L. R. 107, the vendee in a contract for the sale of land had a choice between a suit for specific performance and an action for damages. It was held that the institution of an action for damages constituted a binding election which precluded the vendee from later bringing suit for specific performance.

That is not the situation here at all. In this case the appellees misconstrued the substantive effect of their deed and simply brought their suit upon an erroneous theory of substantive law. Upon discovering their error they were

granted permission to amend, which of course was within the chancellor's discretion even though the case had been submitted for decision. The amendment did not seek an alternative remedy for the original substantive right; it sought to enforce an entirely different substantive right.

An illustration will perhaps clarify the distinction I have in mind. A plaintiff may sue upon an insurance policy, alleging that the damage was caused by a flood. As far as I know there is nothing to prevent him from amending his complaint to assert that the loss was caused by windstorm. This is not an election of remedies; it is the assertion of a different cause of action. See *Spurr* v. *Home Ins. Co.,* 40 Minn. 424, 42 N. W. 206. The majority opinion in the case at bar seems to say that when a plaintiff brings a suit upon a written instrument he is thereby precluded from amending his pleadings to assert a different cause of action based upon a different interpretation of the instrument. If that is the law, counsel must be very cautious in filing suit upon an insurance policy or any other contract, for their right to amend has been taken away.

I realize, of course, that there can be a binding election between substantive rights, ordinarily involving an estoppel of some kind. But here there is no estoppel, for even if the appellants can be said to have been misled by the allegations of the complaint, there was certainly no reliance by them that would give rise to an estoppel. It is therefore my view that there was no binding election, and I would affirm the decree.