Mary Ann BOYD and ASHLEY, DREW & NORTHERN
RAILWAY COMPANY *v.* Homer PIERCE et al

82-180                                    644 S.W.2d 927

Supreme Court of Arkansas
Opinion delivered January 17, 1983
[Rehearing denied February 21, 1983.]

*Arnold, Hamilton & Streetman,* for appellants.

*William E. Johnson,* for appellees.

George Rose Smith, Justice. In 1912 the appellees' predecessors in title, Arthur Pierce and his wife, signed a printed form of Right of Way Deed conveying to the appellant railway company a 100-foot easement across a 40-acre tract and also an easement or conditional fee in a 200x680-foot strip lying along the north side of the right-of-way easement. The railway company is still using the 100-foot easement for its main line. That easement is not in controversy.

This litigation involves the 200-foot strip. In 1980 the appellees brought this suit to establish absolute title to the strip, on the theory that the railway company had abandoned its estate in part of the strip by conveying that part to the other appellant, Mary Ann Boyd, in 1978, and had abandoned its estate in the rest of the strip by ceasing to use it for railway purposes. The chancellor construed the 1912 deed as having conveyed an easement in the disputed strip. He held that the easement in both parts of the strip had been abandoned and entered a decree sustaining the appellees' title to the entire strip. For reversal Miss Boyd argues she has title to her part of the strip because it has not been used for railway purposes for more than 50 years. The railway company argues, upon an opposite theory, that its part of the strip has always been used for railway purposes and hence has not been abandoned.

The chancellor's decision was right. The 1912 printed form of deed conveyed primarily a 100-foot right of way across the Pierces' 40 acres. Between the granting clause and the habendum, however, the draftsman inserted in long-hand, after the description of the 40 acres, the following words: "Also a strip on the north side of said right of way 200 feet wide by 680 feet long. . . . Said grounds to be used only for railroad purposes." Quite evidently the additional grant was inserted to provide a site for the Fountain Hill depot, which was maintained for many years before the depot bulding was sold to a third person and removed less than three years before this suit was brought in 1980.

We do not see that it makes a bit of difference whether the grant of a limited estate in the 200-foot strip is construed as an easement or as a conditional fee. Under either interpretation the strip was to be used for railroad purposes. As long as any part of it was so used, the Pierce family had no clear-cut right to assert its underlying claim to the property. See *Campbell* v. *Southwestern Tel. & Tel. Co.*, 108 Ark. 569, 158 S.W. 1085 (1913). Thus the key issues are how long the property was used for railroad purposes and when it ceased to be so used.

There was no physical separation, such as a fence, between the east part of the strip, the "gin lot," now claimed by Miss Boyd, and the west part, the "vacant lot," claimed by the railway company. As in any instance of possible hostile possession of land, the Pierces were chargeable with notice of only such claims as were reasonably apparent from the uses being made of the property. The Fountain Hill railway station was on the strip, or on the adjoining right of way, until it was removed in 1977. The cotton gin on the gin lot was built under a lease from the railway company and was served by a spur track. That track was taken up perhaps three or four years before this case was tried. Presumably the lease and spur tract were profitable to the railway company and were arguably for railway purposes within the terms of the 1912 deed. But in 1978 there was a clear abandonment of part of the property for railway purposes, when the railway company conveyed the gin lot to Miss Boyd. After that there was no visible indication that the rest of the property — the vacant lot — was being used for railway purposes. At the trial the railway company produced no proof that it had any immediate or future plan to use the vacant lot in the furtherance of its business. The chancellor was justified in concluding that by 1978 the railway company had permanently abandoned its right to use the property. The Pierces were accordingly entitled to clear their title and regain possession.

The appellees' request for the cost of a supplemental abstract is denied.

Affirmed.