**INTERNATIONAL PAPER COMPANY Plaintiff**

**v.**

**MCI WORLDCOM NETWORK SERVICES, INC. Defendant**

**No. CIV.00–6202.**

United States District Court, W.D. Arkansas, Hot Springs Division.

May 1, 2002.

---

Sherry P. Bartley and Leigh Anne Shults, Mitchell, Williams, Selig, Gates & Woodyard, Little Rock, for Plaintiff or Petitioner.

Kevin A. Crass and Jay T. Taylor, Friday, Eldredge & Clark, Little Rock, David A. Handzo and J. Alex Ward, Jenner & Block, LLC, Washington, D.C., for Defendant or Respondent.

*OPINION AND ORDER*

DAWSON, District Judge.

On this 1st day of May 2002, there comes on for consideration the motion for summary judgment filed by defendant MCI Worldcom Network Services, Inc. (MCI) on December 11, 2001. (Doc. # 13). The questions presented by the motion require this court to apply centuries-old real property principles to resolve a dispute involving modern technology. In 1987 and 1988, MCI installed fiber optic cables within a railroad right-of-way held by Union Pacific Railroad Company, successor in interest to Missouri Pacific Railroad (the railroad). The railroad right-of-way runs through property owned in fee by the plaintiff, International Paper Company (IPC). The installation of the fiber optic cable was completed by agreement with the railroad; however, MCI did not obtain the consent of, nor did it compensate, IPC, the owner of the underlying interest. Plaintiff IPC filed this litigation alleging trespass, unjust enrichment, and slander of title seeking declaratory and injunctive relief, an accounting, compensatory and punitive damages, and attorneys'

fees and costs. MCI moves for summary judgment on the grounds that the claims are barred by the applicable statute of limitations, and also because it was not necessary to obtain any authorization from IPC to install the cable within the railroad right-of-way. For the reasons set forth within this memorandum, the motion for summary judgment will be granted and this case will be dismissed.

**Factual Background**

The facts are not substantially in dispute. At some point within the past century (and perhaps even further in the past), the railroad acquired for its use a right-of-way corridor running through the land currently owned in fee by IPC in Hot Spring and Clark Counties, Arkansas. The record before the court does not disclose whether the railroad rights-of-way were acquired by private deed, public grant, condemnation, or otherwise, and it is unknown with regard to each specific tract or segment of land whether the railroad owns the right-of-way in fee or whether the railroad's interest is something less. IPC acquired its interest in the tracts of land between 1941 and 1975, and the titles to IPC's tracts are subject to the railroad rights-of-way.[1] *Pl.'s Exs. Resp. Mot. Summ. J. Exs. 3–16.*

In the early 1980's, after the long distance communication market was opened to competitors of AT & T, various telecommunications companies, both large and small, began exploring the feasibility of developing their own long-distance communications networks. Most of these companies focused on the use of fiber-optic cable as the preferred technology on which to base their new systems, finding that fiber-optics offered performance advantages over satellite or microwave transmission

---

1. Many of the deeds specifically provide that title is subject to the Missouri Pacific Railroad right-of-way.

technologies. After establishing that the fiber-optic technology could be acquired and utilized on a cost efficient basis, telecommunications companies began searching for a means to acquire rights-of-way for installing the cable. Historically, railway and telegraph companies often formed symbiotic alliances because of the numerous benefits the arrangement afforded to both industries. Many of the same benefits enjoyed by the telegraph companies by association with the railroads, including availability of the rights-of-way, routing considerations, relative ease of acquisition, security, accessability, and safety, were found to be of equal or greater value to modern long distance companies, and it was determined that fiber-optic cables would be placed within railroad rights-of-way. As one study concluded, "Railroad rights-of-way provided the foundation for the earliest nation-wide telecommunications service, the telegraph; so why not the latest?" Dale Hatfield & Roland S. Homet, Jr., The Use of Sale of Railroad Rights-of-way for Fiber–Optic Communications, Phase One at 14 (March 15, 1983)(unpublished manuscript, on file with the Association of American Railroads Library). *Pl.'s Resp. Mot. Summ. J. Ex. 1.*

In 1984, MCI[2] entered into a survey agreement with the railroad which gave MCI the right to determine the feasibility of and to prepare and submit construction plans for a fiber-optic system to be placed within the railroad's rights-of-way. In 1985, MCI and the railroad entered into a master agreement which allowed MCI to proceed with the installation of fiber optic cable within the rights-of-way. The master agreement was amended by addendum in 1987 to permit the laying of cable within the railroad right-of way running between Longview, Texas and Memphis, Tennes-

see, which corridor includes the lands now owned by IPC in Hot Spring and Clark Counties. The 1985 master agreement and the 1987 addendum were superseded by an amended master agreement in 1989. The perpetual easements granted to MCI by the railroad provide in part that the "grants are made without covenant of title or for quiet enjoyment and without warranty of title express or implied, and are subject and subordinate to outstanding or superior rights." *Def.'s Mot. Summ. J. Ex. 10.* There is no indication that MCI investigated the nature or quality of the railroad's property interests in the rights-of-way. *Pl.'s Resp. Mot. Summ. J. Ex. 17 at 44–45.*

MCI installed the fiber optic cables within the railroad right-of-way running across IPC's property in 1987 and 1988. Conspicuous, above-ground marker posts were installed at regular intervals along the cable route to warn of the cable's presence below ground. *Def's Mot. Summ. J. Exs. 6 & 7.*

Pursuant to the agreements, the railroad is entitled to use and does use a portion of the fiber-optic system buried beneath its tracks for its own railroad information and communications systems, although the exact uses have not been disclosed. *Def.'s Mot. Summ. J. Ex. 2; Pl.'s Resp. Mot. Summ. J. Ex. 19 at 28–29.* The railroad has averred that the right-of-way in Clark and Hot Spring Counties has been and is actively used as a railroad line. *Def.'s Mot. Summ. J. Ex. 9 at ¶ 6.*

MCI did not obtain the consent of IPC and did not compensate it for the installation of the fiber optic cable. However, by an agreement dated March 30, 1995, IP Timberlands Operating Company, Ltd., conveyed to MCI a temporary easement allowing MCI:

---

**2.** The 1984 agreement was between MCI Telecommunications Corp. and the Missouri Pacific Railroad. MCI Worldcom is the succes-sor to MCI Telecommunications, and Union Pacific Railroad is the current successor to Missouri Pacific.

to enter and re-enter a portion of [IP's] road for the purpose of accessing the railroad right-of-way to facilitate the relocation of [MCI's] fiber optic cable telecommunications system, including the right to park vehicles on [IP's] road. *Id. Ex. 12.*[3] IP Timberlands Operating Company, Ltd. is a limited partnership that manages some if not most of IPC's timber resources. *Id. Ex. 14.* It appears that an officer of International Paper signed the temporary easement on behalf of IP Timberlands Operating Company. *Id. Ex. 12.*

IPC instituted this litigation on November 1, 2000. Jurisdiction is proper under the diversity statute, 28 U.S.C. § 1332.

**The Summary Judgment Standard**

The court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). A fact is material only when its resolution affects the outcome of the case. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Id.* at 252, 106 S.Ct. at 2512. The court views the evidence in favor of the nonmoving party, giving that party the benefit of all justifiable inferences that can be drawn in its favor. If reasonable minds could differ as to the import of the evidence, judgment should not be granted. *Id.* at 250–51, 106 S.Ct. at 2511–12. However, the nonmoving party must set forth specific facts, by affidavit or otherwise, sufficient to raise a genuine issue of material fact for trial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *See also Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (opponent must do more than simply show that there is some metaphysical doubt as to the material facts).

**The Railroad Rights–of–Way**

The question is whether the railroad's interest in the right-of-way traversing the land owned by IPC is sufficient to allow the railroad to grant an easement to MCI for the installation of its fiber-optic cable system. Because this is a diversity case, we apply the substantive law of the state of Arkansas to resolve the question. *Salve Regina College v. Russell,* 499 U.S. 225, 226–227, 111 S.Ct. 1217, 1218, 113 L.Ed.2d 190 (1991); *Shelter Ins. Cos. v. Hildreth,* 255 F.3d 921, 925 (8th Cir.2001). A federal court is required to follow the announced state law in a diversity action "unless there are very persuasive grounds for believing that the state's highest court no longer would adhere to [it]." 19 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4505, at 145–47. (2nd ed.2001). If state law is unsettled, it becomes our duty to predict the rule we believe the Arkansas Supreme Court would follow. *Novak v. Navistar Int'l Transp. Corp.,* 46 F.3d 844, 847 (8th Cir. 1995). We note at the outset that the developed case law concerning railroad rights-of-way is old, and many of the early decisions involved telegraph technology, the precursor to the telephone and modern day telecommunications technology.

■■■■ IPC claims that any interest less than a fee would not entitle the railroad to grant an easement to MCI, and that a review of the documents evidencing the railroad's right-of-way is necessary to de-

---

**3.** IPC disputes this fact, but has offered no facts or evidence to support the denial.

termine validity of IPC's causes of action. MCI contends that it is not necessary to examine each individual deed or conveyance establishing the railroad right-of-way, because the railroad interest is at the very least an easement for railroad purposes. MCI's assertion appears to be a correct statement of the law. In Arkansas, a railroad right-of-way is traditionally a narrow strip of land that is either owned in fee, or held by conditional fee or easement to be used for "railroad purposes." *Coleman v. Missouri Pacific Railroad Company,* 294 Ark. 633, 745 S.W.2d 622 (1988); *Chicago, R.I. & P.R.Co. v. Olson,* 222 Ark. 828, 262 S.W.2d 882 (1953) (citing 2 Thompson on Real Property, § 462 and 74 C.J.S., Railroads, § 84 c. (1)); *Daugherty v. Helena & Northwestern Ry.,* 221 Ark. 101, 252 S.W.2d 546 (1952) (citing *Magnolia Petroleum Co. v. Thompson,* 106 F.2d 217 (8th Cir.1939) *rev'd on other grounds,* 309 U.S. 478, 60 S.Ct. 628, 84 L.Ed. 876); *St. Louis–San Francisco Ry. Co. v. White,* 199 Ark. 56, 132 S.W.2d 807 (1939). The general rule in Arkansas is that "if the deed purports to convey only a right of way, it does not convey the land itself, but the fee remains in the grantor, and the railway company acquires a mere easement in perpetuity for railway purposes." *Coleman, Id.* at 635, 745 S.W.2d at 623 (citing *Olsen,* 222 Ark. 828, 262 S.W.2d 882). When called upon to construe deeds conveying a railroad right-of-way, the Arkansas Supreme Court has held that it does not make a difference whether the grant is construed as an easement or a conditional fee, because under either interpretation, the strip is to be used for railroad purposes. *Boyd v. Pierce,* 278 Ark. 161, 644 S.W.2d 927 (1983).

■ The Supreme Court has held that it is unnecessary to determine whether the effect of a deed is to convey fee-simple title or an easement, so long as some portion of the strip is used for railroad purposes. *Ritter v. Thompson,* 144 S.W. 910, 911, 102 Ark. 442 (1912). Even if the right-of-way is only an easement, the railway company has the right to use and possess all the land conveyed so long as any portion of the strip is used for railroad purposes. *Id.* An easement in perpetuity for railroad purposes "is an interest which is absolute for the purposes for which the land is conveyed so long as it is used for those purposes, even though the language of the deed may fall short of conveying the fee..." *St. Louis–San Francisco Ry. Co. v. White, Id.,* 132 S.W.2d at 808. A perpetual easement for railroad purposes has been described as "an easement in the nature of a fee." *Graham v. St. Louis, Iron Mountain & Southern Railway Co.,* 69 Ark. 562, 65 S.W. 1048, 1051 (1901)(on rehearing, opinion by J. Wood). Railroad companies "have the exclusive right to use their right of way for the purposes for which such corporations are organized, and such uses carry with it an interest in the ground which is in the nature of real property..." *Standard Pipe Line Co., Inc. v. Index–Sulphur Drainage Dist.,* 173 Ark. 372, 293 S.W. 1031, 1033 (1927) (citation omitted)(stating that railroad right of way is subject to local assessments as real property). A railway company also has the right to "lease to permit the surplus use of its right-of-way, or of its property," and this right is the railroad's "private property and it is often very valuable property." *Northern Pac. Ry. Co. v. North American Telegraph Co.,* 230 F. 347, 349 (8th Cir.1915) (citations omitted)(holding that telegraph company required to pay railroad for surplus use of railroad right-of-way for telegraph purposes). However, an easement for railway purposes is not a fee and does not convey the mineral estate in the land.[4] *Olson, id.* at 829, 262 S.W.2d at 883.

---

4. In a case decided under federal law, the    Eighth Circuit Court of Appeals held that the

We conclude that it is not necessary to review each of the relevant railroad deeds to determine the exact nature of the interest owned by the railroad, because at a minimum each right-of-way deed granted an easement for railroad purposes only. MCI has alleged that the railroad's interest in each parcel is at least an easement for railroad purposes, and IPC has not come forward with any proof suggesting that the railroad's interest is something less. Although possible in theory, we have seen nothing in the case law or elsewhere recognizing a railroad right-of-way more limited in nature than the traditional easement for railroad purposes. Arkansas law provides that these railroad easements convey an interest in the ground that entitles the railroad to lease or license the surplus right-of-way to third parties for railroad purposes. The key issue is whether, under Arkansas law, the laying of the fiber-optic cable may properly be deemed a railroad purpose.

In *Ritter v. Thompson*, 144 S.W. 910, 911, 102 Ark. 442 (1912), the railroad granted licenses to Ritter and other parties allowing them to build various structures on the railroad right-of-way, including a saloon, a doctor's office, a barbershop, a hardware store and a furniture store. Ritter, the underlying landowner, filed suit contending that the other parties' buildings presented a fire hazard to his buildings. Ritter sought to cancel the licenses and to enjoin the railroad from granting other licenses, contending that the licenses violated the "for railroad purposes only" clause in the railroad deed, and that the violation gave him the right to repossess himself of the land. The Court found that for five years Ritter failed to notify the railroad company of his objection to the granting of the licenses as being in violation of the "for railroad purposes only" clause, and held that, if Ritter ever had the rights claimed under the clause, he had waived them by his conduct.

A year or so later, the Arkansas Supreme Court denied compensation to a plaintiff for telephone poles constructed in a railroad right-of-way. "So long as the railroad company occupied any portion of its right of way, it had the exclusive use and right of control coextensive with the boundary described in its deed." *Campbell v. Southwestern Telegraph & Telephone Co.*, 158 S.W. 1085, 108 Ark. 569 (1913).

We find the case relied upon by IPC to be inapposite to the issue. In *Southwestern Bell Telephone Co. v. Biddle*, 186 Ark. 294, 54 S.W.2d 57 (1932), the phone company placed a line of telephone poles within a strip of land that belonged to Biddle before it was condemned by the state highway commission for changing and widening the highway. The Supreme Court held that the condemnation of an easement for highway use would not prevent Biddle from collecting damages from the phone company for the new servitude imposed by the telephone poles, because the phone company use was not contemplated when the highway easement was taken or granted. *Id.*, 54 S.W.2d at 59. *Biddle* is not controlling to our inquiry because an easement for highway purposes is not comparable to an easement for railroad purposes. *See Wright v. St. Louis Southwestern Ry. Co.*, 175 F. 845 (C.C.W.D.Ark.1910)(finding that railroad right-of-way differs very es-

State of Nebraska, which owned as successor to the United States a servient estate underlying a railroad right-of-way, had sufficient title to convey a pipe-line easement in the subsurface subject to the railroad's right to use the land for railroad purposes. *Energy Transportation Systems, Inc. v. Union Pacific Rd. Co.*, 619 F.2d 696 (8th Cir.1980)(construing railroad right-of-way granted pursuant to Pacific Railroad Acts of 1862 and 1864).

sentially from land taken for public highway). The *Biddle* opinion does not cite either *Ritter or Campbell* and did not change the law with regard to easements for railroad purposes.

In *Boyd v. Pierce*, 278 Ark. 161, 644 S.W.2d 927 (1983), the railroad acquired a right-of-way to a strip of land in 1912. On one portion of the strip a station was built, while another portion of the same strip (the gin lot) was leased to a third party for the construction and operation of a cotton gin served by a spur track. In approximately 1977, the railroad removed the station, took up the spur track, and sold the gin lot to Miss Boyd, a private party. Mr. Pierce, the underlying land owner, sued the railroad for title to and possession of the right-of-way strip contending that it had been abandoned by the railroad. The chancery court rendered judgment for Pierce. On appeal, the Supreme Court presumed that the lease of the gin lot and construction of the spur track "were arguably for railway purposes within the terms of the 1912 deed." *Id.*, 644 S.W.2d at 929. The Court reaffirmed the rule that where a deed conveys an easement or a conditional fee "for railroad purposes only," the servient landowner has no right to assert its underlying claim to the property so long as any portion of the land is being used for railroad purposes. However, in *Boyd*, the railroad had clearly abandoned its interest by removing the track and station. The railroad company also failed to produce "proof that it had any immediate or future plan to use the vacant lot in the furtherance of its business." *Id.* Accordingly, Pierce was entitled to clear title and possession of the easement. The Court came to the same conclusion in *El Dorado & Wesson Ry. Co. v. Smith*, 233 Ark. 298, 344 S.W.2d 343 (1961), when it held that a right-of-way easement was abandoned and terminated when the railroad line was discontinued and the tracks were removed.

More recently, in *Cannco Contractors, Inc. v. Livingston*, 282 Ark. 438, 669 S.W.2d 457 (1984), the Arkansas Supreme Court held that a right-of-way deed for railroad purposes was abandoned when, after deciding that the land was no longer required for railroad operations, the railroad sold the right-of-way land and the railroad tracks to the Livingstons. The Court determined that the property was no longer used for "railroad purposes" because the property had been deeded to a private concern. "A railroad purpose is one which is primarily for the benefit of the public, and not a private individual." *Id.* at 441–442, 669 S.W.2d 457, 669 S.W.2d at 460 (internal quotes and citation omitted). Even though the Livingstons used the track to ship their products, the "primary benefit is still to the Livingstons' business, not the railroad, and certainly not the public." *Id. See also Miller v. Empire Rice Mills, Inc.*, 228 Ark. 1161, 312 S.W.2d 925 (1958)(concluding deed conveying land from railroad to privately owned rice mill violated "for railroad purposes only" clause).

Based upon the foregoing authority, we are persuaded that the grant of a right-of-way by easement for railroad purposes conveys a substantial interest in the real property that is different from the usual easement. We believe the announced state law applicable to this matter can be summarized as follows: (1) A right-of-way deed does not convey the mineral estate in the land; (2) a perpetual easement for railroad purposes does not permit the railroad to sell the land to a third party for non-railroad use; (3) so long as the railroad is occupying any portion of the right-of-way, the railroad is entitled to grant licenses or easements to third parties provided the additional use may reasonably be considered to be of benefit to the railroad; (4) while the railroad is occu-

pying any portion of its right-of-way, the underlying owner is not entitled to compensation for obstructions the railroad places or permits to be placed upon its right-of-way;[5] (5) the owner of the servient estate may not re-enter and claim possession of the right-of-way until and unless the land is abandoned by the railroad; and (6) a railroad interest will be determined abandoned only when the railroad ceases to use the land or any part of it for railroad operations.

It is not necessary for the court to address whether the railroad may grant an easement or license for private, non-railroad uses over the objection of the underlying landowner, because telecommunications service is a public use. *Arkansas State Highway Commission v. Southwestern Bell Telephone, Co.,* 206 Ark. 1099, 178 S.W.2d 1002, 1005 (1944) (citations omitted); *St. Louis & S.F.R. Co. v. Southwestern Telephone & Telegraph Co.,* 121 F. 276 (8th Cir.1903). Furthermore, Arkansas statutes provide that telecommunications companies may construct, operate and maintain lines necessary "for the speedy transmission of intelligence... upon, along, and parallel to any of the railroads" upon the payment of damages to the owners of the railroads. ARK. CODE ANN. § 23–17–101.

We do not think the fact that the fiber-optic cable is buried a few feet[6] below the surface of the right-of-way would change the analysis under Arkansas law. As discussed herein, the Arkansas Supreme Court has consistently held that, with the exception of mineral rights, the railroad has an interest in the ground that carries with it the exclusive right to use the prop-

erty for railroad purposes. Railroad use of the non-mineral topsoil is not inconsistent with the purposes for which the rights-of-way were granted. No one has suggested that the fiber-optic cable buried in the topsoil presents more of a burden upon the servient estate than the previously accepted arrangement of stringing phone lines along poles set into the ground at intervals along the right-of-way.

We find that the railroad has not abandoned the rights-of-way, and that they are still used as an active railroad corridor. While the railroad has granted MCI a perpetual easement, the railroad has not sold the right-of-way to a private party for non-railroad use. Furthermore, the laying of the fiber optic cable was for railroad purposes: a portion of the cable is used for railroad communications and data transmission while the remaining cable capacity is available for public use. Accordingly, we conclude that under the laws of the State of Arkansas the railroad had the right to grant the perpetual easements to MCI for the laying of the fiber-optic cable.

## The Statute of Limitations

MCI contends that IPC is barred from pursuing its claims by the statute of limitations applicable to suits against telecommunications companies. Arkansas statutes provide that:

> No suit shall be brought against any telecommunications company or cooperative by the reason of the installation, use, or maintenance of telecommunications lines, poles, equipment, or fixtures on any real property, or within any right-of-way of any public way, unless it

---

**5.** The underlying owner of the land is presumed to have been compensated for all permissible uses, both present and future, at the time the land is conveyed to the railroad. *See Little Rock & Ft. S. Ry. Co. v. Greer,* 96 S.W. 129, 77 Ark. 387 (1906).

**6.** Fiber-optic cable is buried just below the frost-line at a depth of four feet. Dale Hatfield & Roland S. Homet, Jr., The Use of Sale of Railroad Rights-of-way for Fiber–Optic Communications, *id.* at 38

is commenced within two (2) years after the cause of action has accrued. ARK. CODE ANN. § 23–17–237 (2002 Repl.) The fiber-optic cables were put in place in 1987–88, while this case was not filed until November 1, 2000. IPC claims that the statute is not applicable to this litigation because a company offering communications via fiber-optic cables is not included within the statutory definition of a telecommunications company.

■ A telecommunications company is defined as an "entity that offers telecommunications services to the public for compensation." ARK. CODE ANN. § 23–17–202(12).

"Telecommunications service" means the offering to the public for compensation the transmission of voice, data, or other electronic information at any frequency over any part of the electromagnetic spectrum, notwithstanding any other use of the associated facilities. Such term does not include radio and television broadcast or distribution services, or the provision or publishing of yellow pages, regardless of the entity providing such services, or services to the extent that such services are used in connection with the operation of an electric utility system owned by a government entity.

ARK. CODE ANN. § 12–17–202(13)(2002 Repl.) IPC relies on the history of these subsections to support its proposition that the Arkansas legislature intended to exclude transmission via fiber-optic cable from the definition of telecommunications service. Prior to 1989, the applicable subsections read as follows:

(10) "Telephone service" means any communication service whereby voice communication through the use of electricity and wire connection between the transmitting and receiving apparatus is the principal intended use thereof and shall include all telephone lines, facilities, or systems used in the rendition of such service;

(11) "Telephone company means any natural person, firm, association, corporation, or partnership, other than a cooperative, and their receivers, trustees, or lessees owing or operating any facility or system used in the furnishing of telephone service within this state"

ARK. CODE ANN. § 23–17–202 (1987). In 1989, the definitions contained within these subsections were broadened by amendment:

(10) "Telecommunications service" means any communication service through the use of electricity, microwave, fiber optics, or other accepted means establishing connection between the transmitting and receiving point and is the principal intended use thereof and shall include all telecommunications lines, facilities, or systems used in the rendition of such service;

(11) "Telecommunications company means any natural person, firm, association, corporation, or partnership, other than a cooperative, and their receivers, trustees, or lessees owning or operating any facility or system used in the furnishing of telecommunications service within this state"

ARK. CODE ANN. § 23–17–202 (1989 Supp.)(emphasis added). In 1997, section 23–17–202 was completely rewritten as set forth herein above. IPC contends that by specifically deleting from the definition of telecommunication service the reference to "any communication service through the use of electricity, microwave, fiber optics, or other accepted means establishing connection" and rewriting the definition to include "the transmission of voice, data, or other electronic information at any frequency over any part of the electromagnetic spectrum," the Arkansas legislature

specifically intended to exclude fiber-optics companies from the definition.

We do not agree. A reading of section 23–17–202 in its former and present forms makes clear that, by the 1989 amendment and the 1997 rewrite, the legislative intent was to continually expand the definition of telecommunications service to include new and emerging technologies. Transmission of information via light signals through fiber-optic cables meets the present definition of telecommunications service because light is electromagnetic radiation.[7] Accordingly, we find the two year limitations period provided in section 23–17–237 is applicable to IPC's claims against MCI.

▆ We also find and conclude that IPC's claims accrued when the cable was buried within the right-of-way and marked by conspicuous posts at regular intervals. *See Southwestern Bell Tel. Co. v. Poindexter*, 245 Ark. 624, 433 S.W.2d 833 (1968); *Core v. Southwestern Bell Tel. Co.*, 673 F.Supp. 974 (W.D.Ark.1987), *aff'd*, 847 F.2d 497 (8th Cir.1988). In any event, the claim accrued no later than March 30, 1995, the date on which IP Timberlands Operating Company, Ltd., conveyed to MCI a temporary easement allowing MCI to enter IPC's land to access and relocate the fiber-optic system. As IPC's claims are based upon the installation of the fiber optic cable system, and because the claims accrued more than two years before the filing of the instant litigation, this suit is barred by the applicable statute of limitations, and the complaint should be dismissed.

### ORDER

The motion for summary judgment should be and hereby is GRANTED, and this case is hereby DISMISSED in its entirety. Each party shall bear its own costs.

IT IS SO ORDERED.

---

7. The dictionary defines "light" as "electromagnetic radiation." WEBSTER'S II NEW COL-LEGE DICTIONARY (1995).